United States District Court
District of Massachusetts
No. 11 CA 12063

Jury Trial Demanded

Danilo Lopes
         Plaintiff
   V.

Joh Beland
Leah Doe
Jane Doe
Ann Doe
Mary Moe
John Doe
Jim Doe
Thomas Dickhaut
Anthony Mendonsa
Peter Walker
Randy Fisher
Jeffry Guerin
Lawrence Amblo
Jennifer Sanderson
Timothy Raimon
Brian R. Miller
Zachary Whitaker
Glenn A. Doher
Thomas Tocci
Luis Spencer
Kristie Ladouceur

Peter J. Heffernan
D.J. Hager
George Johns
Joel Andrade
MHM Corporation Services
        Defendants

## VERIFIED Complaint With A Jury Demand
### Certificate of Jailhouse lawyer

1. I Rashad Rasheed, declares pursuant to 28 USC § 1746: that I am a prisoner and Jailhouse lawyer at MCI-SBCC and that in October, 2011 a mentally ill prisoner by the name Danilo Lopes W84992, related to me how the defendants herein left him hanging in the HSU Shower in August, 2011 for almost 10 minutes an asked for my help. Under Johnson V. Avery, 393 U.S. 483, 490 (1969) and 42 USC §§ 10801-10851 I drafted and prepared this Complaint and motion for Temporary restraining Order and Preliminary Injunction for Mr. Lopes. Without my help Mr. Lopes would be unable to bring this matter to the Court's attention, because he would be dead !!!

November 14, 2011     Rashad Rasheed
                      Rashad Rasheed

### Introduction
2. This is a civil rights action

— 3 —

Filed by Danilo Lopes ("Lopes"), a state
mentally ill prisoner, for damages and
injunctive relief under 42 USC § 1983, and
for Protection and Advocacy for Individual
with Mental Illness Act ("PAMII") under 42
USC § 10801 – 10851 and American with
Disabilities Act ("ADA") under 42 USC § 12131
et seg alleging denial of his rights to
adequate mental health care for his serious
mental health and safety needs in violation of
the Eighth Amendment to the United States
Constitution stemming from the Department of
Correction ("Doc") defendants and MHM Correctional
Services ("MHM") defendants blanket policy that
prohibits Doc/MHM mental health professionals
from making an individualized determination
of Lopes mental health and safety needs for a
single bunk cell treatment and thereby interfering
with the judgment of the mental health
professionals by factors unrelated to Lopes'
mental health and safety needs and thereby
forced Lopes' into attempting to commit suicide
in directly violation of 103 Doc 650.01 et seg; 103 Doc
207.04(2); and 103 CMR 761.07(10); G·L·c· 124, §1(s)
and G·L·c· 127 §38F constitutes deliberate
indifference to Lopes serious mental
health and safety needs.

— 4 —

3. This court has jurisdiction over Lopes Federal Claims pursuant to 28 USC § 1331 and 1343 (a) (3) and 28 USC §§ 2201 and 2202 and G.L.c.129 § 38F and 38H.

4. This court has jurisdiction over Lopes' state law claims pursuant to 28 USC § 1367, and G.L.c.129 § 38F.

Exhaustion of Administrative Remedies

5. Lopes has exhausted all available administrative remedies regarding the matters described in this complaint. On November 2, 2011 he filed grievance No. 55819 and on October _____ 2011 MHM grievance. On grievance No. 55819 was denied, defendant Mendonsa denied the appeal. On November 4, 2011 MHM grievance was denied and on November 11 MHM grievance appeal was denied. Exhibits see also G.L.c 127 § 38F and 28 USC § 1915 (g).

Parties

6. The plaintiff, Danilo Lopes ("Lopes"), was incarcerated at both MCI-Shirley-medium ("Shirley") and MCI-Souza Baranowski Correctional Center ("MCI-SBCC") at all relevant times described in this complaint. P.O. Box 8000, Shirley, MA 01464.

7. Defendant John Beland ("Beland") is an employee of MHM Correctional Services ("MHM") and mental health director at MCI-SBCC. He is sued in his individual capacity. Beland address is one(1) Administration Road, Bridgewater, MA 02324.

8. At the time of the events described in this Complaint, defendants Leah Doe; Jane Doe; Ann Doe; Mary Moe; John Doe and Jim Doe were employees of MHM, a private corporation under contract with defendant Luis Spencer in accordance with C.L.c. 124, §1 (m) to provide adequate mental health care to needed state prisoners within the DOC in accordance with 103 DOC 650.01 et seq; 103 DOC 630; 103 DOC 207.04(3) and 103 CMR 761-07(10); C.L.c. 124, §1 (S); C.L. 30A, §1A-8; C.L.c. 127 §38E-38H and C.L.c. 124, §1(c)(9); C.L.c. 30, §36(a); ACA Standards: 3-4336, 4337, 4342, 4349, 4362, 4367, 4368, 4369; Prison Rape Elimination Act of 2003 Public Law 108-79 ("PREA"); 103 DOC 519 and NCCHC Standards, and mental health professionals at MCI-SBCC, whose names are presently unknown to Lopes. Upon information and belief, the above named are still employed by MHM

at MCI-SBCC. They are sued in their individual capacities. The above named defendants address is: One (1) Administration Road, Bridgewater, MA 02324.

9. Defendant Thomas Dickhaut ("Dickhaut") is the Superintendent of MCI-SBCC. Dickhaut is responsible for conditions and operations at MCI-SBCC. G.L.c. 125 §

Dickhaut is also a final policy maker for MCI-SBCC. He is sued in his individual and official capacities. Dickhaut address is: P.O. Box 8000, Shirley, MA 01464.

10. Defendant Anthony Mendonsa ("Mendonsa") at all relevant times herein were both Deputy of treatment and Superintendent of MCI-SBCC. He is sued in his individual capacity. Mendonsa was responsable for enforcing 103 Doc 207.04(§); 103 Doc 650 and 103 CmR 761.07(10) as Deputy of Treatment. His current address is: P.O. Box 8000, Shirley, MA 01464.

11. Defendants Peter Walker ("Walker"); Randy Fisher ("Fisher"); Jeffrey Guerin ("Guerin"); Lawrence Amblo ("Amblo"); Jennifer Sanderson ("Sanderson"); Timothy Raimon ("Raimon"); Brian R. Miller ("Miller"), Zachary Whitaker ("Whitaker") Glen A. Doher—

and Thomas Tocci are 2 Correctional officers employed at MCI-SBCC. They are sued in their individual capacities. Their address is: P.o. Box 8000, Shirley, MA 01464.

12. Defendant Luis Spencer ("Spencer") is the commissioner of the DOC and responsible for the overall operation of the DOC. See G.L. c. 124, §1 et seq. Spencer is the final policymaker for the DOC. He is sued in his individual and official capacities. Spencer address is: 50 Maple street, suite 3, Milford, MA 01757.

13. Defendant Kristie Ladouceur ("Ladouceur") is the grievance coordinator for the DOC under 103 cmr 491.13. She is sued in her individual and official capacities. Ladouceur address is: 50 Maple Street, Suite 3, Milford, MA 01757.

14. Defendant Peter J. Heffernan ("Heffernan") is the Deputy Director of Health Services Division for the DOC. He is sued in both his individual and official capacities. His address is: P.o. Box 426 Bridgewater, MA 02324.

15. Defendant D.J. Hager ("Hager") is the Grievance and appeal coordinator for MHM. He is sued in his individual

and official capacities. His address is: One(1) Administrative Road, Bridgewater MA 02324.

16. Defendant George Johns ("Johns") is MHM Regional Vice President. Johns is a final policy maker for MHM. He is sued in his individual and official capacities. His address is: One Administration Road Bridgewater, MA 02324.

17. Defendant Joel T. Andrade ("Andrade") is the Director of Clinical Programs for MHM. Andrade is also a final policy maker for MHM. He is sued in his individual and official capacities. His address is: One Administration Road, Bridgewater MA 02324.

18. Defendant MHM Services Inc. ("MHM"), is a private Massachusetts corporation. MHM is under contract with DOC defendant Spencer to provide adequate mental health care to all DOC inmates.

19. At all times relevant to the events described herein, all the defendants have acted under color of state law. Defendants Spencer, Mendonsa and Dickhaut continue to act under color of state law.

20 Defendant Sanderson address is: MCI-Norfolk, two Clarke Street, Norfolk, MA 02056.

## FACTS

21. In 1990-1991 Lopes was confined in the Plymouth County House Of Correction.

### Rape While incarcerated

22. Lopes was raped while confined in a double bunked cell in the Plymouth County House Of Correction during 1990-1991. Lopes did not report the assault to the Jail officials due to his fear of being called a "snitch". Lopes was released in 1991.

### Phobia Causes Fights with Cellmates

23. In 2001 Lopes was re-arrested and held in the Middlesex County Jail in Cambridge.

24. Upon his arrival at the Jail, Lopes told the Jail officials that he had mental health issues that precluded him from being assigned to a double or multi bunked cell or dormitory, stemming from the rape incident and requested to speak with the mental health staff and a single bunked cell, the Jail officials disregarded Lopes requests and assigned Lopes to the dormitory.

25. Lopes refused to enter the dormitory and was placed in segregation in a single bunked cell.

26. Subsequently Lopes was removed from segregation and placed in a single bunked cell to the taunts of other inmates which led to Lopes assaulting several taunter's.

27. In 2002 Lopes was incarcerated in the Middleton Jail and the Jail officials disregarded his claims of psychological problems and prison rape allegation and forced him into a double bunked cell and Lopes assaulted his cellmate and was subsequently transferred to Bridgewater State Hospital.

28. While at Bridgewater State Hospital (BSH) Lopes told the officials about the rape while incarcerated incident at Plymouth County House of Correction and his phobia about being in a double bunk or multi bunked cell and requested a single bunk cell, Lopes requests were denied and BSH assigned Lopes to the dormitory.

29. While assigned to the dormitory Lopes stabbed an inmate.

30. BSH officials transferred Lopes to the Suffolk County Jail.

31. The Suffolk County Jail officials placed Lopes in a single bunk cell.

32. Lopes was not involved in no incident of fighting with his cellmate while at the jail.

## Bipolar Disorder Diagnosis

33. In 2002 Lopes was diagnose by the mental health professionals at BSH as suffering from a bipolar disorder.

## Double bunk cell causes suicide attempt

34. In 2005 Lopes entered the Massachusetts Department of Correction ("DOC") at MCI-Souza Baranowski Correctional center ("SBCC") and a single bunk cell

35. Lopes had no incident of fighting with other inmates or suicide attempts, regarding double bunk.

36. In May 2009 DOC defendants transferred Lopes from his single bunk cell at SBCC, to MCI-Shirley-medium ("Shirley") and a double bunk cell

37. Upon his arrival at Shirley Lopes told the intake mental health professional that he had a psychological problem that preclude him from being doable

bunk and requested a single bunk
cell and the mental health professional
told topes to give double bunking a
chance.

38. The prison officials at Shirley
assigned Lopes to a double bunk cell.

39. Lopes serious mental health
issues caused Lopes to seek mental health
treatment and requests for a single bunk
cell pursuant to 103 Doc 650.04 (A)(4)
and 103 Doc 207.04(2).

40. Shirley mental health professional
told Lopes that they would take care of it,
but they never did.

41. Lopes begin having fights with
his cellmates and Lopes requested that
the Shirley prison officials assign him
to a single bunk cell, to no avail.

42. While confined at Shirley
Lopes had about eighth (8) fights with his
cellmates, stemming from his bipolar disorder
and rape while incarcerated issues.

43. Lopes told the mental
health professionals at Shirley and Shirley
superintendent that his mental health and
rape while incarcerated issues precluded him
from being in a double bunk cell and

requested placement in a single bunk cell.

44. In may, 2011 Lopes was transferred from Shirley to SBCC

45. On May 27, Lopes arrived at SBCC and during his intake screen Lopes told MHM mental health professional defendant Leah Doe that he needed a single bunk cell due to his bipolar and rape while incarcerated issues.

46. Defendant Leah told Lopes that defendant Dickhaut october, 2010 policy precluded mental health treatment for single bunk cell related issues and that he would have to direct his issues to the security staff. (Exhibit "A").

47. Lopes refused to enter a double bunk cell and told defendant Leah that he would kill himself before going into a double bunk cell and Leah stated: "its DOC and MHM policy" and there's nothing she can do, (Exhibit "A") and thereafter defendant Leah ordered Lopes placed on mental health watch in the Hospital Services Unit ("HSU").

48. Lopes asked defendant Leah why she was ordering him placed on mental health watch and defendant Leah stated: "you stated that you would kill yourself before you go into a double bunk cell an all inmates are double bunk per policy" "so I'm placing you on mental health watch".

49. Defendants Leah Doe, Dickhaut and Mendonsa kept Lopes on mental health watch for 11 days as punishment for his refusal to enter a double bunk cell due to his bipolar and rape while incarcerated issues and forced Lopes to go on a hunger strike and suffer hunger pain and weight loss in order to be removed from mental health watch.

50. On June 8, 2011 defendant Walker ordered Lopes to enter double bunk cell 23 in H-2 and Lopes refused.

51. Defendant Walker without complying with the requirements of 103 CMR 430.09(6) issued Lopes D-report 228950 while Lopes was on mental health watch and in his written notice of the charges defendant Walker advised the disciplinary hearing officer

— 15—

that "the HSU is in dire Need of cells
right Now and all this does is held
up a medical bed For someone that really
Needs it." (Exhibit "B").

52. On June 9, 2011 Lopes was
still Confined in HSU on mental health
watch when defendant Raimon ordered
him to enter double bunk cell 25 in
m-2 and Loper refused and demanded
to speak with mental health which
was disregarded by defendant Raimon
and defendant Raimon issued Loper
D-report 227077.

53. On June 9, 2011 defendant
Dickhaut informed Lopes that his refusal
on June 8, 2011 to "move From HSU
to the H2 housing unit. [was] [considered]
a threat to the security and good order
of the facility. Be advised you have been
placed on Non-contact visiting status for
six (6) months." (Exhibit "C") without
Notice or hearing and opportunity to
Challenge the decision in Violation of
103 CmR 421.01 et seq; and 103
CmR 430.01 et seq, and the Eighth
and Fourteenth Amendments. by punishing
Lopes For his psychological problems.

54. Defendants Dickhaut; Mendonsa; Walker; Raiman; Fisher; Guerin; Amble; Sanderson; Miller; Whitaker; Doher; Tocci; Spencer; Ladouceur; Heffernan; Hager; Johns; Andrade and NAHM pursuant to 103 CMR 430.09(1); 103 DOC 630; 650.01 and 103 DOC 207.04(2) and 103 CMR 761.07(10) had actual knowledge of Lopes psychological problems, yet they punished Lopes for his psychological problems and prison guards repeatedly taunted Lopes with "Kill yourself."

55. On June 10, 2011 defendant Mendonsa conveyed a message to Lopes promising that if move into a doable bunk cell he would not get a cellmate, because he is on "Single cell status" — Via- captain and John Doe and Lopes told the officer that he would consider it, and Lopes agreed.

56. On or about June 10, 2011 Lopes while still on mental health watch asked defendants John Doe and Jane Doe to order the prison guards to stop telling him, to <u>Kill himself</u> and to have him moved to a single bunk cell so that he could defecate without being watched and that all the stress with being ordered to

entering a double bunk cell contrary to his psychological and rape while incarcerated issues were causing him to have thoughts about suicide and Jane Doe told Lopes that cell assignment was the DOC responsibility.

57. On or about June 10, 2011 SBCC Captain told Lopes that Deputy Mendonsa told him that he was on single cell status and that he would be moving him to M-2 cell 25 an although its a double bunk cell he would not have a cellmate trusting Captain Doe and defendant Mendonsa Lopes agreed and moved to M-2 cell 25 a double bunk cell.

58. On June 21, 2011 DOC defendant Whitaker informed Lopes that he would be getting a cellmate and Lopes explained to Whitaker that he was on a single cell status and Whitaker replied: "no such thing as single cell, here its either double bunk cells 2-31 or single bunk cells 33-64 and that he was in cell 25 a double bunk cell, so he was getting a cellmate and Lopes requested to speak with mental health because he have psychological issues that precluded him from being in a double bunk cell and Whitaker stated: "mental health

have nothing to do with cell assignment;"
and walked away;"

59. On June 21, 2011 Lopes refused
to accept a cellmate and defendant Whitaker
placed Lopes on AA Status and issued
Lopes D-report No. 230027 for refusing
to accept a cellmate without complying
with the requirement of 103 CMR 430.

60. Defendants Fisher, Doher and
Amblo approved defendant Whitaker punishment
of Lopes because of his psychological problems
and rape while incarcerated issues without
complying with 103 cmr 430.

61. On June 22, 2011 Defendants
Dickhaut and Mendonsa in retaliation
for Lopes refusal to accept a cellmate
due to his psychological problems and
rape while incarcerated issues and
in direct violation of 103 CMR 430.
09(1) and 103 DOC 650.01 et seg
103 DOC 207.04(2) and 103 cmr
761.07(10) ordered that Lopes be
placed in the restrictive housing unit
L-2 double bunk cell 28 and the
confiscation of all of Lopes personal,
religious and legal property, books, writing
materials, television, headphones; radio

without notice or hearing in violation
of 103 CMR 403; 103 CMR 420; 103
CMR 421; 103 CMR 430; 103 CMR 477;
103 CMR 478; 103 CMR 481; 103 CMR
482; 103 CMR 483; 103 CMR 486.
and Eighth and Fourteenth Amendments.

62. Defendants Dickhaut and
Mendonsa kept Lopes confined in L-2
for almost 30 days without any of his
personal, legal or religious property. and for
almost 30 days without his television.

63. On July 14, 2011 Lopes spoke
with defendant Beland and requested a
mental health proscribed single bunk order
in accordance with 103 DOC 650; 103
DOC 630 and 103 DOC 207.04(3) due
to his bipolar disorder and rape
while incarcerated issues and defendant
Beland replied "mental health have nothing
to do with cell assignment" and
retaliated against Lopes for requesting
mental health treatment by ordering
that Lopes be placed on mental
health watch.

64. On July 14, 2011 defendants
Dickhaut and Mendonsa ordered Lopes
transferred from L-2 cell 28 to

Hospital Service Unit ("HSU") mental health watch.

65. On July 11, 2011 defendants Beland, Dickhaut and Mendonsa placed Lopes on mental health watch as punishment for seeking mental health treatment for his bipolar disorder and rape while incarcerated issues.

66. Lopes written a letter to defendant Mendonsa in June complaining about being confined in a double bunk cell contrary to his mental health problems and defendant Mendonsa written back stating that he directed his letter to defendant Beland.

67. On or about July 14, 2011 Lopes told defendant Ann Doe that his bipolar disorder and rape while incarcerated issues precluded him from being assigned to a double bunk cell and requested that she issue him a mental health single bunk order and defendant Ann Doe stated that mental health have nothing to do with cell assignment.

68. On or about JUN 15, 2011 Lopes asked defendant Mary Moe why was she approving his continue placement on mental health watch when all

he requested was for a mental health single bunk order as treatment for his bipolar disorder and rape while incarcerated issues. and Mary Moe reply was that mental health have nothing to do with general population cell assignment and that the only cell assignment that mental health control is mental health watch and that he will remain on mental health watch until he accept a double bunk cell.

69. On or about July 15, 2011 Lopes stopped eating; suffered serious hunger pains and loss weight for the next 30 plus days while he was on mental health watch for refusing to accept a cellmate.

70. On or about July 20, 2011 Lopes complained to defendant Jim Doe and Jim Doe told him that mental health have nothing to do with cell assignment.

71. From July 14, 2011 through August 18, 2011 defendants Walker, Raimen Doe and Officer Gallagher would repeatedly threat Lopes with mace and make comments that he was going into a double bunk cell one way or the other? and "Kill yourself."

72. On August 10, 2011 DOC defendants found Loper hanging in the HSU Shower.

73. On August 10, 2011 defendant Jane Doe spoke to Loper and Loper explained to her that he was mentally stressed from the taunts, threats of double bunk, being on mental health watch for seeking mental health treatment and that he needed to speak with the doctor about his medication, defendant Jane Doe told Loper that mental health have no control over cell assignment and that she would speak with the doctor regarding his medication.

74. On August 18, 2011 Loper complained to defendant Mendonsa who was doing rounds in HSU and defendant Mendonsa told Loper "come off watch" and he would place him in K-1 in a single bunk cell and Loper agreed.

75. On August 18, 2011 defendant Dickhaut and Mendonsa transferred Loper from HSU mental health watch to K-1 Cell 24 a single bunk cell.

76. On September 29, 2011 defendants Dickhaut and Mendonsa ordered Loper moved to a double bunk Cell in G-1 Loper refused due to

— 23 ~

his bipolar and rape while incarcerated
issues.

77. On September 29, 2011
defendants Dickhaut and Mendonsa in
retaliation for Lopes refusal to enter
a double bunk cell ordered the
confiscation and seizure of all of Lopes
personal, legal and religious property, books,
canteen, television, headphones and radio
and writing material and the placement
of Lopes in L-2 cell 56 without notice
or hearing.

78. On September 14 and 21, 2011
defendants Sanderson, Fisher, Fisher, Doher,
and Amblo related to D-report No. 230027
punished Lopes because of his psychological
problems.

79. Defendants Mendonsa, Dickhaut,
Walker, Fisher, Guerin, Amblo, Sanderson,
Raimon, Miller, Whitaker, Doher, Tocci,
Spencer, Ladouceur, Heffernan, Hager,
Johns, Andrade and Mahon all
conspired to punish Lopes for his psychological
problems and prison rape issues while
incarcerated issues.

80. Plaintiff Lopes invoke his
rights under G.L. c. 127 §38F because he
is in imminent risk of substantial harm to his
safety needs (i.e suicide) and plaintiff filed
formal grievance on                              pursuant
to 103 cmr 491.01 et seq and more than
10 days have expired and defendant Tocci

-24-

have failed to decide the grievance and
defendant Boland denied Lopes MAM grievance
on November 3, 2011, hence, Lopes is in
the process of exhausting his available
administrative remedies. He is filing
this complaint and accompanying motion
for Preliminary Injunction now to prevent
irreparable injury (Suicide) as a direct
result of defendants' ongoing violation
of his Constitutional rights and 42
USC § 12131 et seg. Jackson v. Dist.
Of Columbia, 254 F.3d 262, 267-268
(D.C. Cir. 2001). Plaintiff will immediately
notify the Court and file an amended
complaint once all available administrative
remedies have been exhausted.

## CAUSES OF ACTION

81. Lopes support the following claims
by reference to the previous paragraphs
1 through 80 above:

## Count I

82. The deliberate indifference of
defendants Dickhaut; Mendonsa; Spencer,
Heffernan; Hager, Johns; Andrade and
MHM blanket policy that prohibited and
forbid MHM mental health professionals
at MCI-SBCC from making a mental health
determination of Lopes serious mental health
and safety needs related to his bipolar
disorder and rape while incarcerated needs
and from prescribing and providing adequate
mental health care and treatment needs

-25-

of a single bunk cell has deprived
and continues to deprive Lopes of
his rights under the Eighth Amendment
of the United States Constitution and
42 USC § 12131 et seq and violates
Lopes State law rights under C.L.c.124,
§1(m); and (s); 103 DOC 650.01 et seq;
103 DOC 207.04(3) and 103 CMR 761.07(10),

<u>Count II</u>

83. The deliberate indifference of
defendants Beland; Leah Doe; Jane Doe;
Ann Doe; Mary Moe; John Doe; and
Jim Doe in failing to perform their
professional duties under C.L.c.124 §1(m);
and (s); 103 DOC 650.01 et seq; 103 DOC
207.04(3); 103 CMR 761.07(10) and 103
DOC 630 and provide Lopes with adequate
mental health care for his serious
mental health and safety needs and
prescribed treatment of a single bunk
cell restriction and retaliatory action
of placing Lopes on mental health
watch for seeking adequate mental
health care resulted in Lopes attempted
suicide has deprived and continues to
deprive Lopes of his rights under
the Eighth Amendment of the United
States Constitution and 42 USC §12131
et seq.

Count III

84- The deliberate indifference of defendants Dickhaut; Mendonsa; Walker; Fisher; Guerin; Amble; Sanderson; Raimon; miller; Whitaker; Doheg; Tacci; Spencer; Ladouceur or punishing Lopes For seeking adequate mental health care For his serious mental health and safety needs (i.e. bipolar disorder and rape while incarcerated) For a prescribed single bunk cell and retalratory action of confiscating and seizing all of Lopes personal, religious and legal property; writing books, canteen, television, headphones and radio and placement of Lopes on pre-disciplinary hearing sanction in restricted unit L-2 and non-contact social and legal visit has deprived and continues to deprive Lopes of his rights under the First and Eighth Amendments of the United States Constitution and 103 CMR: 483; 420; 421; 430; 471; 477, 478; 481; 482; 483; 486 and C.L.E. 127, §§ 32; 39; 40 and 36A and 42 USC § 12131 et seg.

85. Lopes has no plain, adequate or complete remedy at law to redress the wrongs described herein because 42 USC § 1997e (e) prohibit damages without a showing of physical injury. Lopes is in immenent danger of irreparable harm (i.e. suicide), unless this court grant the injunctive relief which Lopes seeks. And prohibit Defendants from retaliating against any prisoner who provide Lopes with affidavits of help Lopes with this lawsuit.

# PRAYER FOR RELIEF

WHEREFORE, Lopes respectfully prays that this Court:

A. Issue a declaratory judgment stating that:

1. Defendants Diskhaut; mendonsa; Spencer; Beland; Heffernan; Johns; Andrade and MHM Corporation blanket policy specifically targeting mentally Ill prisoners needs for a mental health prescribed single bunk cell order and forbidding private Contracted qualified mental health Professionals from assessing Lopes Serious mental healt and safety needs for the primary purpose of prescribing mental health treatmens of Single bunk cell order violated, and continue to Violate Lopes rights Under the Eighth Amendment of the United States Constitution and 42 USC § 1231 et Seq;

2. Defendants Beland, Leah Doe, Jane Doe, Ann Doe, Mary moe; John Doe; Jim moe, Hager, Johns an Andrade failure to Perform their statutory duties under 103 Doc. 630; 650; 207-04(2) and G.L.c.124 §1(m)(s) deprived Lopes of access to adequate mental health

-28-

care violated, and continues to
violate Lopes rights under the
Eighth Amendment of the
United States Constitution and
42 USC § 12131 et seq

3. Defendants Beland; Leah
Doe, Jane Doe; Ann Doe;
Mary Moe; John Doe; Jim
Moe and Mendonsa retaliatory
action of ordering Lopes
Placed on mental health
watch and using the so-
called restart chair on
Lopes for seeking a mental
health single bunk cell
Order as treatment for his
serious mental health and
safety needs (i.e. bipolar
disorder and rape while
incarcerated) violated, and
continue to violate Lopes
rights under the first
and Eighth Amendment
of the United States
Constitution and 42 USC
§ 12131 et seq.

4. Defendants Dickhaut, Mendonsa
Walker, Fisher, Guerin, Amble,
Sanderson, Raimon, Miller,
Whitaker, Doheg, Tocci,
Spencer, Ladouceur and
Heffernan punishment and
Confiscation of Lopes personal,
religious, legal, television, headphones,
radio, canteen and books and
property, placement of Lopes
on pre-disciplinary sanctions
and non-contact social and
legal visits and confinement
of Lopes in the restrictive
housing Unit L-2 without
notice or hearing and as
punishment for his serious
mental illness and rape while
incarcerated issues and for
seeking adequate mental
health care violated, and
continue to violate Lopes
Eighth Amendment rights
under the United States
Constitution and 42 USC
S/2131, and 103 CMR: 403,
420, 421, 430, 477, 478, 481,
482, 483, 486; 103 CMR 761.
and 103 DOC 650.01, 103 DOC
207.04(2) and 103 DOC 630
G.L. c. 127 §§32, 39 and 40

— 30 —

B. Enter preliminary and permanent injunctions ordering defendants Dickhauty, mendonsaj spencery Johns; Andrade and MHM corporation, their successors, agents, employees; and all persons acting in concert with them to recall and rescind their October 8, 2010 blanket policy prohibiting Lopes and inmates from utilizing mental health professionals related to single cell and single bunk cells requests and to issue a new memo stating that 103 DOC 650.01 et seg Mental Health Services and 103 DOC 207.04(2) and 103 CMR 761.07(10) and 42 USC § 12131 must be followed, discontinue placement of inmates, including Lopes on mental health watch or in the so-called re-start chair or any other punitive impediment for seeking non-emergency or emergency mental health care related to mental health single bunk cell restriction and from retaliating against Lopes, Rashad Rasheed or any other inmate.

C. Enter Judgment in favor of Lopes for nominal; compensatory, and punitive damages, as allowed by law, against each defendant, jointly and severally.

D. Attorney fees and costs.

E. Order such additional relief as this court may deem just and proper.

November 7, 2011

Danilo lopes
Danilo Lopes W84995
P.O. Box 8000
Shirley, MA 01464

## Verification

Danilo Lopes W84992 pursuant to 28
USC 1746. declare and verify under penalty of
perjury under the laws of the United States
of America that the foregoing is true and
correct, to the best of his knowledge and that
the facts stated on information and belief are
true to the best of his knowledge and belief.

November        2011

Danilo lopes
Danilo Lopes