United States District Court
District of Massachusetts
No. __11-12063__

Danilo Lopes
        Plaintiff

        V.

John Beland, et al
        Defendants

RECEIVED
Clerk's Office
USDC., Mass.,
Date  11-17-11
by    CMG
Deputy Clerk

## Motion For A Temporary Restraining Order And A Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(a)(b) and G.L. c. 127, §38F and 28 USC §1367 plaintiff Danilo Lopes ("Lopes") a mentally ill prisoner under 42 USC §10801-10851 et seq "Mental Illness Act" ("Protection and Advocacy for Individual with Mental Illness Act ("PAMII") moves this Court for a narrowly drawn temporary restraining order ("TRO") and for a preliminary injunction ("PI") for the reasons set forth below and in his supporting memorandum of law; verified complaint an attached affidavit with exhibits attachments:

        1- There is a substantial threat of irreparable harm if the injunction is not granted. Lopes will commit suicide, Lopes

On several occasions have attempted to commit suicide by hanging and cutting his wrist, the most recent incident was in August, 2011. Stemming from defendants blanket policy of denying him access to qualified mental health professionals judgment for the treatment of his serious mental health and safety needs (i.e. bipolar disorder and rape while incarcerated issues) and forbidding mental health professionals from prescribing recommended treatment for his psychological problems — single bunk cell. (Exhibit "A"). Lopes have suffered and continue to suffer serious physical and mental injuries as a direct result of defendants intentionally denying him access to qualified mental health professionals and treatment for his serious mental health and safety needs and this deliberate indifference to Lopes serious mental health needs violate the Eighth Amendment — *Torraco V. Maloney,* 923 F. 2d 231, 234 -235 (1 cir. 1991).

Under 42 USC §1997(e)(e) any remedy at law for Lopes' injuries will be inadequate.

2. There is a reasonable likelihood that plaintiff (Lopes) will prevail on the merits. For more than six months, defendants and their blanket policy have deprived Lopes of access to qualified mental health professional

Judgments and prescribed and recommended treatment (i.e. single bunk cell) for his serious mental health and safety needs (i.e. bipolar disorder and rape while incarcerated issues)

In doing so, defendants have acted with deliberate indifference to a substantial risk of serious harm to Lopes mental health and safety needs, in violation of Lopes rights under the Eighth Amendment and 42 USC §12131 et seg, <u>Torraco V. Maloney</u>, supra.

3. The threatened injury to Lopes outweighs any harm the proposed injunction may cause defendants. The relief that Lopes seek is an order compelling defendants to perform their preexisting duties under the United Constitution, the Eighth Amendment. <u>Torraco V. Maloney</u>, 923 F.2d at 234-235, and their own regulations: 103 DOC 650.01; 630; and 103 DOC 207.04(2) and 103 CMR 761.07(10); C.L.c, 124, §1(m)(5) and C.L.c.123 § 32 and 38F.

4. The public interest will not be disserved by a grant of TRO\PI. To the contrary, the public interest is well served by protecting the Constitutional rights of the mentally ill and vulnerable prisoners 42 USC §1080-5).

## Statement of Facts

Lopes incorporates by reference the verified civil complaint, along with all supporting documents.

As stated in the declaration submitted with this motion, Lopes was raped while incarcerated, during his incarceration in the Plymouth County House of Correction in 1990-1991. (Exhibit "B"). In 2002 Lopes was diagnosed with a bipolar disorder. (Exhibit "B").

Lopes entered the Department of Correction (DOC) in 2005. (Complaint para. 34). Lopes was initially classified for MCI-Souza Baranowski Correctional Center (SBCC). (Complaint para. 34-35). In 2009 Lopes was transferred to Shirley medium. (Complaint para. 36-43). On may 3, 2009 the Doc defendants implemented a statewide double and multi bunk policy, contrary to and inconsistent with the enabling statute C.L. C. 127 §32.

Upon his arrival at MCI-Shirley medium and during his initial intake Lopes informed MHM mental health professional that he suffered from bipolar and that he been raped while incarcerated. And that his psychological problems precluded

him from being double bunked and the mental professional stated that they would check into the matter and get back to him. Lopes was assigned to a double bunk cell. (Exhibit "B").

As a result of his psychological problems and issues, Lopes repeatedly fought with his various cellmates. (Ex. "B")

In May, 2010 Lopes was returned to SBCC and during his intake interview Lopes told defendant Leah Doe that his bipolar and rape while incarcerated precluded him from being assigned to a double or multi bunk cell and requested a mental health prescribed single bunk cell order in accordance with 103 DOC 207.04(2) and 103 DOC 650.01 et seg and 103 CMR 761.07(10), and defendant Leah Doe explained to Lopes that in October, 2010 defendant Dickhaut implemented a blanket policy forbidding her from rendering professional judgment concerning his mental illness and prescribing mental health treatment of a single bunk cell. (Ex. "A") and (Ex. "B").

Lopes refused to enter a double

bunk cell and defendant Leah Doe placed Lopes on mental health watch.

On June 8, 2011 while Lopes was confined in SBCC Hospital Services Unit (HSU) on mental health watch, defendant Walker ordered Lopes to enter double bunk cell 23 in H-2 and Lopes explained to Walker that he have psychological problems that preclude him from being assigned to a double bunk cell and requested a single bunk cell, Walker disregarded Lopes request and told him that he was moving to cell 23 in H-2 and Lopes refused. (Complaint para. 50). Defendant Walker issued Lopes D-report No. 228950. (complaint para. 51).

On June 9, 2011 while still on mental health watch for refusing to enter a double bunk cell, defendant Raimon ordered Lopes to enter double bunk cell 25 in M-2 and Lopes refused and requested to speak with mental health defendant Raimon disregarded Lopes requests and issued Lopes D-report No. 229077. (complaint para. 52).

On June 9, 2011 defendant Dickhaut in retaliation for Lopes requests for access to adequate mental health care for his

—7—

serious mental health and safety needs and refusal to enter a double bunk cell, informed Lopes that he was a threat to "the security and order (good) of the facility" and placed Lopes on Non-contact social and legal visits for six months. (Complain para. 53).

On or about June 10, 2011 defendant Mendonsa assured Lopes that if he move to double bunk cell 25 in M-2 he would remain on single cell status without a cellmate and that he would not get a cellmate, and Lopes agreed to enter double bunk cell 25 in M-2. (Exhibit "B").(Verified Complaint para. 55).

On June 10, 2011 Lopes voluntarily entered double bunk cell 25 in M-2 based on defendant Mendonsa promise that he would not have a cellmate. (Exhibit "B").

On June 21, 2011 defendant Walker ordered Lopes to accept a cellmate and Lopes refused based on his psychological problems and defendant Mendonsa, promise that he was on single bunk status and defendant Whitaker issued Lopes D-report No. 230027. (Verified Complaint

-8-

para. 58-59).

On June 22, 2011 defendants in retaliation for Lopes refusal to accept a cellmate transferred Lopes to the punishment block L-2 and confiscated all of Lopes personal property, religious items, legal materials television, radio and headphone. (verified Complaint paras 61-62   ).

On July 14, 2011 while confined in L-2 and during staff access Lopes asked defendant Beland why he was being denied mental health treatment for his bipolar and rape while incarcerated issues and requested a mental health prescribed single bunk cell order and defendant Beland retaliated and ordered Lopes placed on mental health watch in HSU. (verified complaint paras 63-65).

On August 10, 2011 defendants found Lopes hanging in the HSU shower. (complaint para. 72-73).

On August 18, 2011 defendant Mendonsa told Lopes that if he come off mental health watch and promise not to harm himself he would move him to a single bunk cell in the

– 9 –

Mental health Unit K-1 and Loper agreed. (Complaint Para. 74-75).

On August 18, 2011 defendants Mendonsa and Dickhaut transferred Loper from HSU to Cell (single bunk) 24 in K-1. (complaint para. 75).

On September 29, 2011 defendants Mendonsa and Dickhaut ordered Loper to move into double bunk Cell in G-1 and Loper refused. (complaint para. 76).

On September 29, 2011 defendants Mendonsa and Dickhaut placed Loper in the punishment unit L-2 and confiscated all of his personal property; religious items; legal materials; television; radio, headphones, access to law library, access to law librarian and legal assistance; and Cell electric power. (complaint para. 77).

As of November 14, 2011 is still confined in the punishment Unit for refusing to enter a double bunk cell due to his bipolar and rape while incarcerated psychological issues and Loper have thoughts of suicide constantly. (Exhibit "B"),

Defendants refuses to provide Lopes with access to adequate mental health care for his serious mental health and safety needs. (Exhibit "B").

## ARGUMENT

I.   Lopes is entitled to A temporary Restraining Order And Preliminary Injunction

In determining whether a preliminary injunction should issue, a court must consider whether the party seeking the injunction has demonstrated that: (1) it has a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the preliminary injunction is denied; (4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. Ross—Simons of Warwick, Inc. V. Baccarat Inc., 102 F.3d 12, 18 (1 cir. 1996).

Under 18 USC § 3626(a) courts may not enter prospective relief in prison cases

"Unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right." <u>Crawford V. Clarke</u> 578 F. 3d 39, 43-44 (1 cir. 2009). Lopes injunction requests for adequate mental health care and prescribed treatment of a single bunk mental order are narrowly drawn and extends no further then necessary to correct defendants intentional violation of his Eighth Amendment right. Each of these factors favors the grant of this motion:

A. <u>The Plaintiff is threatened with irreparable harm</u>

Lopes alleges that defendants blanket policy of prohibiting mental health professionals from prescribing as treatment (i.e. recommended treatment for his bipolar disorder and rape while incarcerated psychological issues) for his bipolar disorder and rape while incarcerated mental health issues a single bunk cell order violates his rights under the Eighth Amendment and constitutes deliberate indifference to his serious mental health and safety needs. <u>Torraco V.</u>

$-12-$

<u>Maloney</u>, 923 F. 2d 231, 234-235 (1 cir. 1991)
"the Eighth Amendment also protects
against deliberate indifference to an
inmates mental health and safety needs."
        Irreparable harm will result unless
an injunction is granted. As a result of
being denied access to qualified mental
health professionals judgment for the
primary purpose of making an individualized
determination whether the recommended
treatment of a single bunk cell order
should be prescribed for his bipolar disorder
and rape while incarcerated issues, Lopes
attempted to commit suicide in order
to avoid being forced to enter a double
bunk cell and he will likely attempt
to commit suicide again in the future
if the requested injunction is not granted.
        In <u>Lewis V. Casey</u>, 518 U.S. 343, 349,
350 (1996) the Supreme Court stated that to
win injunction, an inmate must show
an actual or imminent injury. Suicide
without a doubt is an imminent injury.
        As the Supreme Court has explained
"one does not have to await the
consummation of threatened injury to
obtain preventative relief" <u>Pennsylvania</u>

V. West Virginia, 262 U.S. 553, 593 (1923), Farmer V. Brennan, 511 U.S. 825, 845 (1994).

Helling V. Mckinney, 509 U.S. 25, 33 (1993) "it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."

Suicide is unquestionably life-threatening and where Lopes have attempted suicide in the past, as a direct result of being denied access to qualified mental health professionals judgment and prescribed single bunk cell treatment and order.

Lopes brought his serious mental health and safety needs to defendants by tell thems; attempted suicide; MHM grievances and appeals and DOC grievances and 103 DOC 207.04(3); 103 DOC 630; and 103 CMR 761.07(10), putting defendants on notice of the harm to him, caused by their October 8, 2010 blanket policy. (Exhibit "B").

Lopes was raped while incarcerated in the Plymouth County House of Correction (PCHC) in the early 1990's. (Verified complaint para. 21).

In 2002 Lopes was diagnosed by qualified mental health professionals at the Bridgewater State Hospital with bipolar disorders and psychotropic medication was prescribed. (Verified complaint para. 27-28^{33}).

Under Massachusetts laws defendant Spencer is required to contract with private medical and mental health professionals to provide Lopes with adequate medical and mental health care as required by the federal and state Constitution. G.L.c. 124, §1(m)(5).

To carry out both his statutory and Constitutional duties defendant Spencer issues 103 DOC 630.01-02 et seq and 650.01 et seq; and 103 DOC 207.04(2) and 103 CMR 761.07(10).

~~650~~ 103 DOC 630.01 and 103 DOC 650.01 expressly applies to mental health services. Kosilek v. Maloney, 221 F. Supp. 2d 156, 167 (D.Mass. 2002, C.J. Wolf) "under the relevant contract, the private medical contractor is to have <u>full</u> responsibility for decisions concerning the type, timing and level of medical, dental, and mental health services to be provided to inmates consistent with [103 DOC 630.01 and 650.01 et seq]".

103 DOC 207.04(2) read in part: "Under no circumstances shall correctional staff substitute their judgment for that of medical staff where a medical accommodation has been prescribed." (Exhibit "C").

In the case at bar, qualified mental health professionals and MHM defendants herein provide Lopes with treatment for his bipolar disorders and rape while incarcerated issues and prescribe psychotropic medication and place Lopes on mental health watch in accordance with 103 DOC 650, 07 stemming from his refusal to enter a double bunk cell or accept a cellmate due to his serious mental health and safety needs, and Lopes attempted suicide for being ordered to enter a double bunk cell and to accept a cellmate. (Verified complaint para. 33, 39-41, 45-79).

103 CMR 430.09(6); 103 DOC 650.01 and 650.03(A)(1) MHM defendants and DOC defendants "to seek and obtain consultation from mental health professionals when correctional staff have reason to believe that an inmate may be mentally ill or when mental health status is an

issue in the consideration of classification, discipline, program participation, placement or release."

Under 103 Doc 650.09 MHM defendants have at their disposal 64 single bunk cells (i.e. mental health Residential Treatment cells) at SBCC; MCI-OCCC (i.e. 60 cells) and MCI-Gardener (i.e. 60 single bunk cells) expressly set aside for inmates with mental health. and safety needs.

DOC defendants own cell housing selection tool "Internal Housing Risk Factors (Males)" (drafted dated March 2009) ("risk factor tool" and "Lesson Summary For Course Title Quay obligate MHM defendants to answer all questions related to Lopes mental illness and rape while incarcerated. (Exhibit "D").

As State Court Judge Giles Found and held in <u>Massachusetts Correctional Legal Services V. Clarke</u>, Superior Court Civil Action No. 09-1709-B (May 13, 2009 J. Giles) "Inmates assigned to a double bunk will have their names placed on a waiting list to obtain single-cell housing which is reserved for inmates with medical and Prison Rape Elimination Act issues." (Exhibit

"En ).

Yet, MHM defendants have Failed
and refuses to perform their duties under
the Eighth Amendment, _Torraco V. Maloney,_
supra, 923 F. 2d at 234—235 and State
laws, policies and regulation an as requires
by their binding Contract with the Doc
under R.L.c. 124, 51(m) and prescribed
a single bunk mental health order For
Lopes for the stated reason: "I understand
From your grievance that you are requesting
that the mental health department prescribe
you a mental health order For a Single-bunk
Cell". The mental health department is not
responsible For housing and classification issues.
Please refer your request directly to security
personnel. Your _remedy_ is denied." (Exhibit
"F" ). This is a Clear denial of access
to mental health professionals qualified to
exercise Judgment regarding Lopes serious
mental health and safety needs. _Hartman V._
_Correctional Medical Services, Inc.,_ 960 F.
Supp. 1577, 1582—1583 (M.D. FIA. 1996) "medical
provider could be found deliberately indifferent
For permitting a person with only a master's
degree and no professional licenses to have
authority over mental health referrals

and suicide precautions". Casey v. Lewis
834 F. Supp. 1477, 1545 (D. Arz. 1993) "making
of medical judgments by security staff could
constitute deliberate indifference." Alsina-Ortiz v.
LaBoy, 400 F. 3d 77, 83 (1 cir. 2005).

Madrid v. Gomez, 889 F. Supp. 1146,
1281 (N.D. Cal. 1995) "lack of input by mental
health staff concerning housing decision even
where they impact mental health Supported
deliberate indifference finding."

As a matter of law, the continuing
deprivation of constitutional rights constitutes
irreparable harm. Elrod v. Burns, 427 U.S.
347, 373 (1976); American Trucking Associations
Inc. v. City of Los Angeles, 559 F. 3d 1046,
1058-1059 (9 cir. 2009). This principle has been
applied in prison litigation generally, Jolly v.
Coughlin, 76 F. 3d 468, 482 (2 cir. 1996), and
specifically in prison medical care cases.
Phillips v. Michigan Dept of Corrections,
731 F. Supp. 792, 801 (W.D. Mich. 1990), aff'd
932 F. 3d 969 (6 cir. 1991).

In addition, Lopes is threatened with
actual and imminent irreparable harm where
he attempted to commit suicide after receiving
D-reports and confiscation of all of his
property for refusing to enter a double bunk
cell and to accept a cellmate and defendant's

Currently housing Lopes in the punishment Unit (L-2) for refusing to enter a double bunk cell (i.e. Lopes been so confined since September 29, 2011) and it is likely that Lopes will again attempt to commit suicide in the future, if the injunction is not granted. Threats or risk of suicide Constitute serious mental health and safety needs - Conn v. City of Reno, 572 F.3d 1047, 1055 (9 cir. 2009).

Any remedy at law for Lopes injuries will be inadequate. 42 USC §1997e(e) prohibit Compensatory damages without a prior showing of physical injury.

Lopes preliminary injunctive relief requests are narrowly draw an appropriate to correct this ongoing violation of Lopes' Eighth Amendment rights.

B. The threatened actual/imminent harm to Lopes (i.e. suicide) outweighs Any possible harm that the injunction IF granted may cause **defendants**

The actual and imminent harm to Lopes (i.e. suicide) outweighs any possible harm that might result to defendants by The TRO and P.I. As this memorandum and verified Complaint has explained an asserted, defendants

blanket policy of forbidding qualified mental health professional from prescribing the recommended treatment for Lopes serious psychological problems (i.e. bipolar disorder and rape while incarcerated issues) — single bunk cell in accordance with 103 Doc 630.01, 103 Doc 650.01 and 103 Doc 207.04(2) and the Eighth Amendment and defendants repeated punishment of Lopes for refusing to enter a double bunk cell or to accept a cellmate contrary to his recommended mental health and safety needs compelled Lopes to attempt to commit suicide and its likely that Lopes will again attempt suicide if the P.I and TRO are not granted.

The relief that Lopes seek is essentially an order compelling defendants to perform their preexisting duties under the Eighth Amendment. Torraco v. Maloney, 923 F.2d at 234-235 and Farmer v. Brennan, 511 U.S. at 832-833. And their statutory and regulatory duties under C.L.C. 124, § 7(m)(s), 103 Doc 630.01 et seq, 103 Doc 650.01 et seq and a 103 CMR 761.07(10) and 103 Doc 207.04(2).

The sufferings that the defendants will experience if the Court grants the order will consist of recalling their unconstitutional October 8, 2010 blanket policy and providing Lopes with access to qualified mental health professionals and permitting them to exercise their professional judgment and prescribe the recommended treatment of single bunk mental health order for Lopes mental health and safety needs for his bipolar disorder and rape while incarcerated — something that the defendants do, and are obligated to do, for members of the prison population on a daily basis under the Eighth Amendment, <u>Torraca V. Maloney</u>, 923 F. 2d at 234–235, and 103 CMR 420.01 et seq; 103 Doc 630.01; 103 Doc 650.02; 103 Doc 207.04(2); 103 CMR 430.09(6) and 103 CMR 761.07(10).

<u>Kosilek V. Maloney</u>, 221 F. Supp. 2d at 167 "This policy [103 Doc 630.01] expressly applies to mental health services. Under the relevant contract, the private medical contractor is to have <u>full</u> responsibility for decisions concerning the type, timing and level of medical, dental and mental health services to be provided to

inmates")

Hence, the defendants hardship amounts to no more than business as usual.

The proposed relief is narrowly tailored to remedy the ongoing violation of Lopes Eighth Amendment right under Torraco V. Maloney, supra and to prevent the actual and imminent irreparable harm (i.e. suicide) in the Future. 18 USC § 3626(a). It will not cause defendants any real harm.

C. There is a reasonable likelihood that Lopes will succeed on the merits

Lopes has a great likelihood of success on the merits. What defendant Dickhaut has done — is established an unconstitutional and unauthorized blanket policy that target and single out and deny inmates and prisoners, includes Lopes with serious mental illness and rape while incarcerated issues of access to minimal adequate care for their serious mental health and safety needs in violation of the Eighth Amendment and this blanket policy constitutes deliberate indifference to Lopes serious mental health and safety needs. Torraco V. Maloney, 923 F.2d at 234-235.

"the Eighth Amendment also protects against deliberate indifference to an inmates mental health and safety needs"

Barrett v. Coplan, 292 F. supp. 2d 281, 286 (D.N.H. 2003) "a blanket policy that prohibits a prison's medical staff from making a medical determination of an individual inmate's medical needs and prescribe and providing adequate care to treat those needs violates the Eighth Amendment"

Kosilek v. Maloney, 221 F. supp. 2d 156, 162-167 (D. Mass. 2002) "holding an individualized determination by medical professionals is required; a blanket policy denying initation of hormone therapy in prison is impermissible"

Madrid v. Gomez, 889 F. supp. 1146, 1221 (N.D. Cal. 1995) "lack of input by mental health staff concerning housing decisions even where they impact mental health supported deliberate indifference finding"

Casey v. Lewis, 834 F. supp. 1477, 1545 (D. Ariz. 1993) "making of medical judgments by security staff could constitute deliberate indifference"

<u>Balla V. Board of Corrections</u>, 656
F. Supp. 1108, 1116-1117 (D. Idaho 1987)
"double-celling prohibited for maximum
Security and psychiatric housing".

<u>Delgado V. Cady</u>, 576 F. Supp. 1446,
1457 (E. D-Wis. 1983) "limits placed on
Coerced double-celling of inmates with
psychological problems or suicidal tendencies".

<u>Morales Feliciano V. Rossello Gonzalez</u>
13 F. Supp. 2d 151, 210 (D. P.R. 1998) "Failure
to provide mental Staff sufficient to meet
the needs of the prison population is
unconstitutional".

<u>Coleman V. Wilson</u>, 912 F. Supp. 1282,
1320-22 (E. D. Cal. 1995) "Eighth Amendment
was violated by practices including punitive
treatment of prisoners acting out because of
their mental illness"

<u>Arnold on behalf of H. B. V. Lewis</u>,
803 F. Supp. 246, 256 (D. Ariz. 1992) holding
placement in lockdown as punishment for
the symptoms [of the plaintiff's] mental
illness and as an alternative to providing
mental health care violated the Eighth
Amendment")

<u>Cameron V. Tomes</u>, 783 F. Supp. 1511,
1524-1525 (D. Mass. 1992), aff'd as
modified, 990 F. 2d 14, 21 (1 cir. 1993)

— 25 —

"holding application of standard disciplinary procedures to a Sex Offender in a Treatment Center— -- amounted to punishing him for his psychological problems and, when done without consultation with mental health staff, violated the professional judgment standard" see also <u>Jensen v. Clarke</u>, 94 F.3d 1191, 1200-1201 (8 Cir. 1996).

G.L.c. 124, §1(m)(s) requires defendant Spencer to enter contracts with private corporations to provide medical and mental health care to all Massachusetts prisoners, including Lopes. And G.L.c. 124, §1(c), (g); G.L.c. 30, §36(a); G.L.c. 127, §16A requires defendant Spencer to establish policies and regulations for "Mental Health services" (i.e. 103 DOC 650.01-02) and "Medical Services" (i.e. 103 DOC 630.1) see also 103 DOC 207.04(2) and 103 CMR 761.07(10)- See also G.L.c. 127 §117.

<u>Kosilek v. Maloney</u>, 221 F. Supp. 2d 156, 167 (D. mass. 2002) "[103 DOC 630.01] expressly applies to mental health services. Under the relevant contract, the private medical contractor is to have Full responsibility for decisions concerning

— 26 —

the type, timing and level of medical,
dental and mental health services to be
provided to inmates, consistent with [103
Doc 630.01 et seg]. [1]

   103 CMR 420.09(g) "medical provider
shall be requested to update the inmate
Management System medical\mental health
Screen". See also 103 CMR 761.11 (1-3)
103 CMR 761.08(2) "medical orders
Screen"

   103 CMR 761.07 (8)(9) "prescribed
Specialize equipment shall be reviewed
for authorization by the medical Director
of the Contract medical provider within
Seven days of the medical order"

   103 CMR 761.07(10) Correction
Officers and other staff shall not
interfere with medical orders"

   103 DOC 207.04(2) "if medical
Staff determines that a medically
prescribed accommodation is warranted
he\she shall convey the medical order
to the Institution [Americans with
Disabilities Act 42 USC §12131] ADA
Coordinator via the Medical Restrictions
Form --- as per policy 103 Doc 630
and shall enter the order in the

— 27 —

Restrictions / Limitations / special
Needs " section of the medical
Restrictions screen of the medical
module of the IMS"

103 DOC 207.04(2) (second paragraph)
States: "Under no circumstances shall
Correctional staff substitute their
Judgment for that of medical staff
where a medical accommodation has
been prescribed" (Exhibit "C").

Dimarzo v. Cahill, 575 F. 2d
15 (1 cir. 1978) "where jail inmates
alleges that conditions and practices
in jail subject them to unconstitutional
conditions, Commissioner of correction [defendant
Spencer] is proper party defendant where
Commissioner has failed to comply with
his statutory duty to promulgate and
enforce minimum standards and lack
of such standards is reason that conditions
Complained of have fallen below constitutional
allowable limits." See also G.L.c, 127, § 117.

Here the issue is defendant
Spencer deliberate failure to enforce
the Eighth Amendment requirement of adequate
mental health care and treatment for Lopes
serious mental health and safety needs and

— 28—

minimum standards 103 Doc 630.01
et seq; 103 Doc 650.01 et seq, 103
Doc 207.04(2) and 103 CMR 761.01
et seq and 103 CMR 420.09(g) and 103
CMR 430.09(6) and this lack of enforcement
is the reason for defendant Dickhaut
october 8, 2010 unlawful and unauthorized
blanket policy depriving all prisoners at
MCI-SBCC, including Lopez of minimal
access to qualified mental health professionals
Judgment for the treatment of his bipolar
disorder and rape while incorcerated and
prescribing the recommended treatment—single
bunk mental health cell restriction.

G.L.c. 125 § 14 establish defendant
Dickhaut powers and duties as Superintendent
of MCI-SBCC as follows: "Subject to rules
and regulations established by the
commissioner and according to law the
Superintendent shall be responsible for the
Custody and Control of all prisoners
in the Correctional institution."

In the case at bar, as Lopes
verified complaint shows, defendant Dickhaut
implemented an unconstitutional and unauthorized
blanket policy on october 8, 2010 denying
Lopes access to qualified mental health

—29—

professionals, qualified to exercise judgment and make professional judgment and prescribing recommended treatment of single bunk cell order based on individualized assessment of Lopes' bipolar disorder and rape while incarcerated serious mental health and safety needs in violation of Lopes Eighth Amendment right. <u>Torraco V. Maloney</u> 923 F. 2d at 234-235.

Qualified mental health professionals have never evaluated Lopes documented bipolar disorder and rape while incarcerated psychological issues and trauma for the primary purpose of prescribing the recommended treatment of mental health single bunk order.

Defendants unlawful an unauthorized blanket policy of October 8, 2010 (Exhibit "C A") effectively strip Lopes of his Eighth Amendment right under <u>Torraco V. Maloney</u>, 923 F. 2d at 234-235 to adequate mental health care, by prohibiting and forbidding Doc private contract mental health professionals from assessing Lopes bipolar and rape while incarcerated psychological issues for a mental health single bunk cell restriction,

— 30 —

which are forms of treatment, that was prescribed by Doc qualified mental health professionals in accordance with 103 Doc 630.01; 103 Doc 650.02; 103 Doc 207.04(2); 103 CMR 420.09(8); 103 CMR 430.09(6) and 103 CMR 761.07(10), prior to October 8, 2010 and defendant Dickhaut blanket policy, and the mental health community at large, for individuals suffering from bipolar disorders and rape while incarcerated issues (Exhibit "C11").

As a result of defendant Dickhaut blanket policy, no individualized mental health assessment has been done in accordance with 103 Doc 630.01; 103 Doc 650.02 and 103 Doc 207.04 (2) for the purpose of prescribing the recommended treatment — single bunk cell restriction for Lopes serious mental health and safety needs.

This denial of access to qualified mental health professionals amounts to deliberate indifference, in violation of Lopes' right under the Eighth Amendment and 42 USC § 1213/ et seq.

Lopes is therefore likely to succeed on the merits in this case.

D. The Relief sought will serve
   the Public Interest

In this case, the grant of relief
will serve the public interest, because
under the Protection and Advocacy for
Individuals with Mental Illness Act
(PAMII) 42 USC §§ 10801-10851) it is
in the public interest for prison officials
to obey the law, especially the Eighth
Amendment and provide prisoners with
adequate mental health care - Torraco V.
V. Maloney, 923 F. 2d at 234-235. Phelps-
Roper V. Nixon, 545 F. 3d 685, 690 (8
Cir. 2008); Duran V. Anaya, 642 F. Supp.
510, 527 (D. N. m. 1986) "Respect for law,
particularly by officials responsibile for
the administration of the State's correctional
system, is in itself a matter of the
highest public interest".

E. This Court may use State
   Law to Remedy Eighth Amendment
   Violation

This court under 28 USC 81367(a)
may use state laws and regulations in
formulating remedies for defendants Violation
of Lopes Eighth Amendment rights.

Rodriguez v. Doral Mortgage, 57 F. 3d 1168, 1175-1177 (1 cir. 1995) "the Court held: that on remand a district Court was empowered to retain supplemental jurisdiction over the state claim despite having dismissed the federal claim where the two derived from a common nucleus of operative Fact (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)"

Connor v. Com. Gas Company, 251 F. 3d 262, 272-273 (1 cir. 2001) "the trial court could in its discretion exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367"

It is well established that under supplemental jurisdiction, 28 USC § 1367(a), federal courts may enforce state laws when doing so is necessary to protect federal Constitutional rights. Sherriff of Harris County v. Alberti 937 F. 2d 984, 1001 (5 cir. 1991).

United States v. State of Michigan, 680 F. supp. 928, 998 (W.D. Mich. 1987) "Court can order state to comply with State law when non-compliance with state law implicates the Constitutional rights of the inmates at the subject

institutions and . . — when compliance with the state law is the most effective remedy for any specific unconstitutional conditions."

Komyatti v. Bayh, 96 F.3d 955, 960 (7 cir. 1996) Federal courts may use the terms of state statues in formulating remedies for federal violations."

Hence, this court may use G.L. c. 124, §1(m)(q)(s); G.L. c. 127 §117, and G.L.c. 125 § 14 and 103 Doc 630.01, 103 Doc 650.01 et seq; 103 Doc 207.04(2), 103 CMR 420.09(g); 103 CMR 430.09(6) and 103 CMR 761.07(10) to remedy defendants deliberate indifference to Lopes serious mental health and safety needs in violation of the Eighth Amendment, Torraco v. maloney, 923 F.2d at 234-235.

II. Lopes should not be required to post security

Usually a litigant who obtains interim injunctive relief is asked to post security - Rule 65(c), Fed. R. Civ. P. However, Lopes is an indigent prisoner and is unable to post security - The court has discretion to excuse an impoverished

litigant from posting security. <u>Elliott</u>
<u>V. Kiesewetter</u>, 98 F.3d 47, 60 (3 cir,
1996) if "the balance of the equities
weighs overwhelmingly in favor of the
party seeking the injunction.

In view of the serious mental
health and safety danger confronting
Lopes, this court should grant the
relief requested without requiring
the posting of security.

## Conclusion

WHEREFORE, Lopes requests that
upon consideration of this motion and
supporting memorandum of law, this
Court order dendante, their successors
agents, employees, and all persons acting
in concert with them:

(A) To recall and rescind defendant
Dickhaut October 8, 2010 memo and
blanket policy subject: "Change in the
way SBCC emergency mental health
services will be delivered" that
prohibit and forbid mental health services
professionals and inmates, including Lopes
from accessing mental health care per
single cell requests" (Exhibit "A");

—35—

(B.) To Forthwith issue a new notice to all MCI-SBCC prisoners, including that adequate mental health services will be provided to all MCI-SBCC prisoners, including Lopes Consisting with the Eight Amendment under <u>Torres v. Maloney</u>, 923 F.2d at 234-235; 103 Doc 630.01 et seq, 103 Doc 650.01 et seq, 103 Doc 207.04(2); 103 CMR 420.09(8), 103 CMR 430.09(6) and 103 CMR 761.07 (10); G.L.c. 124, §1(m)(s) and G.L.c. 125, § 14;

(C.) Forthwith provide Lopes with access to qualified mental health professionals in accordance with 103 Doc 630.01 et seq, 103 Doc 650.01 et seq; 103 Doc 207.04(8) 103 CMR 420.09(g); 103 CMR 430.09(6) 103 CMR 421.01 et seq and 103 CMR 761.07(10) and the Eighth Amendment for the express purpose of assessing Lopes bipolar disorder and rape while incarcerated issues and prescribing the recommended treatment of single bunk cell restriction;

(D.) To prohibit unqualified

prison guards, prison staff or security from making medical or mental health cell assignment assessment and final decision, and requiring that only qualified medical or mental health professionals make final cell decision/assignment decisions related to Lopes medical or mental health issues.

(E.) To prohibit prison guards, staff or security officers or any other person from ordering Lopes to enter a double bunk cell contrary to his serious mental health and safety needs, or punishing Lopes or using mental health watch as punishment for Lopes refusal to enter a double bunk cell or accept a cellmate;

(F) To preclude the use of the so-called restart-chair or any other device or practice that impede Lopes direct access to qualified mental health professionals for confidential mental health care, and inconsistent with 103 Doc 630.01 et seq and 103 Doc 650.01 et seg.

(G.) To comply with 103 Doc 630.01 et seg; 103 Doc 650.01 et seg, 103 Doc 207.04(3); 103

CmR 420.09(g); 103 CmR 430.09(6) and 103
CmR 761.07(10) and G.L.c. 124, §1(m)(s).
and G.L. c. 127, §36A

(H.) To not retaliate against Lopes,
Rashad Rasheed or any other prisoner who
may provide Lopes with supporting affidavits

(I.) To expung all pre and
post disciplinary sanctions; non-contact
social and legal visits sanctions that were
imposed against Lopes for refusing to enter
a double bunk cell or accept a cellmate
contrary to his serious mental health and
safety needs; and

(J.) A further order referring this
matter to the Disability Law Center pursuant
to 42 USC §§ 10801 -10851 for intervention
and protection of Lopes a mentally ill prisoner.

November 14, 2011                    _Danilo Lopes_
                                     Danilo Lopes W84992
                                     P.O. Box 8000
                                     Shirley, MA 01464