UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANILO LOPES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN BELAND, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 11-12063-DJC |

## SECOND AMENDED COMPLAINT

### PARTIES

1. Plaintiff Danilo Lopes, an individual, is and at all material times has been in the custody of the Massachusetts Department of Correction ("DOC"). Mr. Lopes is currently incarcerated at Old Colony Correctional Center ("Old Colony"), a DOC facility located in Bridgewater, Massachusetts.

2. Defendant Luis S. Spencer, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as Commissioner of the DOC. Mr. Spencer, as Commissioner of the DOC, is responsible pursuant to G. L. c. 124, § 1 for, *inter alia*, establishing and enforcing standards for all DOC facilities and making and promulgating necessary rules and regulations regarding the care and custody of DOC inmates. Mr. Spencer is sued in his official capacity.

3. Defendant Lawrence M. Weiner, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as the DOC's Assistant Deputy Commissioner - Clinical Services. Mr. Weiner is sued in his personal capacity.

4. Defendant Lisa A. Mitchell, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of her employment as the Superintendent of Old Colony. Ms. Mitchell is sued in her official and personal capacities.

5. Defendant Scott E. Anderson, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as the Acting Superintendent of MCI-Shirley, a DOC facility located in Shirley, Massachusetts. Mr. Anderson is sued in his personal capacity.

6. Defendant Thomas E. Dickhaut, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as the Superintendent of Souza-Baranowski Correctional Center ("SBCC"), a DOC facility located in Shirley, Massachusetts. Mr. Dickhaut is sued in his personal capacity.

7. Defendant Anthony M. Mendonsa, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as the Superintendent or Deputy Superintendent of SBCC. Mr. Mendonsa is sued in his personal capacity.

8. Defendant Thomas M. Tocci, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as the Institutional Grievance Coordinator of SBCC. Mr. Tocci is sued in his personal capacity.

9. Defendant MHM Correctional Services, Inc. ("MHM") is a corporation organized under the laws of the State of Delaware. The DOC has contracted with MHM to provide services, including mental health care, to DOC inmates and to perform certain functions on behalf of the DOC. At all times relevant to this Second Amended Complaint, MHM was acting under color of state law.

10. Defendant George D. Johns, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as MHM's Regional Vice President.

11. Defendant Joel T. Andrade, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as MHM's Director of Clinical Programs for Massachusetts.

12. Defendant DJ Hager, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as MHM's Grievance and Appeal Coordinator.

13. Defendant John Beland, at all times relevant to this Second Amended Complaint, was acting under color of state law and within the scope of his employment as MHM's Mental Health Director for SBCC.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

15. Plaintiff is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and, under this Court's supplemental jurisdiction, G. L. c. 231A.

16. Venue is proper in this district under 28 U.S.C. § 1391(b).

**STATEMENT OF FACTS**

17. In or around 1990, Mr. Lopes was confined within the Commonwealth of Massachusetts as a pretrial detainee for a period of approximately 45 days. He had never before been imprisoned. Mr. Lopes was released when the underlying charges against him were dismissed.

18. About two weeks into this period, Mr. Lopes was brutalized and raped by his cellmate. At the time, Mr. Lopes was 17 years old.

19. For about three weeks following this attack, Mr. Lopes was forced to remain confined with his assailant.

20. As a direct result of this traumatic incident, and given childhood abuse of a similar character, Mr. Lopes experiences severe anxiety in response to confinement or threatened confinement with a cellmate. Such confinement, or the threat thereof, causes acute mental distress and physical injury to Mr. Lopes.

21. Such confinement also causes Mr. Lopes to lash out physically in order to neutralize perceived threats, even where his cellmate's conduct is not objectively menacing. In fact, on each occasion that Mr. Lopes is alleged to have acted violently during his incarceration, Mr. Lopes was within his cell and the object of the alleged violence was a cellmate.

22. Mr. Lopes has a medical condition such that it is unsafe, for Mr. Lopes and for others, for Mr. Lopes to have a cellmate.

23. Mr. Lopes has made these facts known to DOC and MHM officials on many occasions, and has properly exhausted all administrative remedies as are available.

**Disregard of Mr. Lopes' Single Cell Restriction and Serious Medical Needs**

24. Mr. Lopes began serving his current sentence in 2005.

25. In 2005, the DOC immediately placed Mr. Lopes on Single Cell Restriction.

26. The purpose of a Single Cell Restriction is to ensure, for medical or other necessary reasons, that an inmate is not housed with a cellmate.

27. The DOC may assign an inmate to a single cell on the basis of seniority and/or good behavior. Such assignments, however, are not Single Cell Restrictions.

28. No hearing has been held in relation to whether Mr. Lopes' Single Cell Restriction ought to be removed.

29. Mr. Lopes' Single Cell Restriction remains in place.

30. Each named defendant has knowingly disregarded Mr. Lopes' Single Cell Restriction.

31. Moreover, DOC and MHM officials, including each of the named defendants, have demonstrated a pattern of deliberate indifference not only to the Single Cell Restriction the DOC itself placed upon Mr. Lopes, but also to Mr. Lopes' serious medical need for a single cell.

32. Defendant Ms. Mitchell heard and disposed of Mr. Lopes' appeal from Disciplinary Report No. 263945, as reflected at **Exhibit A**.

33. Defendant Mr. Mendonsa heard and disposed of Mr. Lopes' appeal from Disciplinary Report No. 230027, as reflected at **Exhibit B**.

34. Defendant Mr. Tocci heard and disposed of Grievance No. 55819, filed by Mr. Lopes, as reflected at **Exhibit C**.

35. Defendants MHM, Mr. Johns, Mr. Andrade, Mr. Hager, and Mr. Beland (collectively, the "MHM Defendants"), together with defendant Mr. Weiner, authored and/or received copies of the decision letters addressed to Mr. Lopes and attached, along with the underlying grievance or appeal, as **Exhibit D** ("Beland Letter") and **Exhibit E** ("Hager Letter"). Both the Beland Letter and the Hager Letter pointedly deny that mental health is considered in determination of single-cell status.

36. The Hager Letter expressly acknowledges that Mr. Lopes is the subject of an active Single Cell Restriction. Nevertheless, the Hager Letter denies the relief requested and

proposes that Mr. Lopes might obtain a single cell assignment "through established practices relating to housing unit seniority and good conduct."

### History of Mr. Lopes' Cell Assignments and Related Discipline

37. From about February 2005 to May 2009, Mr. Lopes was incarcerated at SBCC, a maximum security facility. During the entirety of this time, pursuant to his Single Cell Restriction, Mr. Lopes was housed without a cellmate.

38. From about May 2009 to February 2011, Mr. Lopes was incarcerated at MCI-Shirley, a medium security facility.

39. During this time, Mr. Lopes was housed with cellmates in derogation of the Single Cell Restriction.

40. Mr. Lopes cycled through at least seven cellmates at MCI-Shirley. Frequent changes in cellmate assignment were necessitated by problems arising from Mr. Lopes' anxiety and its manifestation in the form of violent attacks and/or threats.

41. From about February 2011 to May 2011, Mr. Lopes remained incarcerated at MCI-Shirley, but in a punishment unit where his visitation privileges and access to property were denied or curtailed.

42. Defendant Mr. Anderson, among others, imposed said punishment because Mr. Lopes refused to accept a cellmate.

43. At the time said punishment was imposed and/or pending, defendant Mr. Anderson, and others, had been notified by Mr. Lopes of his medical need for a single cell and were otherwise aware of the Single Cell Restriction in effect with respect to Mr. Lopes.

44. Defendant Mr. Anderson, in the letter to Mr. Lopes attached as **Exhibit F**, does not address the fact that Mr. Lopes' conduct was prompted by the DOC's refusal to abide by the

Single Cell Restriction. The letter, moreover, disregards the Single Cell Restriction by indicating that "seniority" is the basis upon which single cells are assigned.

45. In or around May 2011, because of disciplinary infractions incurred on account of resisting orders that he be confined with a cellmate, Mr. Lopes lost eligibility to remain in a medium security facility and was transferred back to SBCC.

46. From about May 2011 to January 2012, Mr. Lopes was incarcerated at SBCC.

47. Upon his arrival at SBCC, Mr. Lopes informed DOC officials of his medical need for a single cell.

48. When this request was denied, Mr. Lopes expressed concern that he would harm himself or others in the event he was forced to be confined with a cellmate. As a result, Mr. Lopes was placed in the HSU, a medical and observation unit.

49. In early June 2011, Mr. Lopes was ordered to depart the HSU and to accept a cell assignment in the H2 housing unit. Mr. Lopes indicated that he would leave the HSU as requested, provided that the Single Cell Restriction was observed.

50. DOC officials, including defendants Mr. Dickhaut and Mr. Mendonsa, refused to abide by the Single Cell Restriction.

51. As a result, Mr. Lopes refused to depart the HSU voluntarily. In response, defendant Mr. Dickhaut restricted Mr. Lopes' visiting privileges as reflected in **Exhibit G**.

52. Additionally, on or about June 11, 2011, at the order and/or with the assent of defendants Mr. Dickhaut and Mr. Mendonsa, Mr. Lopes was threatened with gas canisters and forcibly removed from the HSU.

53. After being handcuffed to a deck for approximately four hours, Mr. Lopes ultimately was placed in a double cell in the H2 unit, but without a cellmate.

54. On or about June 20, 2011, at the order and/or with the assent of defendants Mr. Dickhaut and Mr. Mendonsa, DOC officials approached Mr. Lopes' cell in the H2 unit and attempted to introduce a cellmate.

55. Mr. Lopes exited the cell and refused to re-enter until the proposed cellmate was taken away.

56. As a result, on or about June 22, 2011, and at the order and/or with the assent of defendants Mr. Dickhaut and Mr. Mendonsa, Mr. Lopes was taken to the L2 punishment unit.

57. Mr. Lopes remained in the L2 unit until about July 13, 2011. During this time, he repeatedly requested mental health care in relation to his Single Cell Restriction from, among others, defendants Mr. Mendonsa and Mr. Beland. Mr. Lopes was told that he was "wasting [his] time."

58. Defendant Mr. Beland, on or about July 13, 2011, had Mr. Lopes removed from the L2 unit and placed in the HSU on account of concerns that Mr. Lopes had become acutely suicidal.

59. Mr. Lopes remained in the HSU until about August 18, 2011, when he agreed to be relocated to a single cell in the K1 unit. Mr. Lopes remained in the K1 unit until about September 29, 2011, when it had to be cleared.

60. At this time, at the order and/or with the assent of defendants Mr. Dickhaut and Mr. Mendonsa, Mr. Lopes was informed that he was to be taken to a double cell. Mr. Dickhaut and Mr. Mendonsa were aware that single cells were available.

61. Mr. Lopes refused the double cell assignment on medical grounds. As a result, at the order and/or with the assent of defendants Mr. Dickhaut and Mr. Mendonsa, Mr. Lopes was punished by placement in the L2 unit.

62.     Mr. Lopes remained in the L2 unit until around January 11, 2012, when he was removed from SBCC and taken to Bridgewater State Hospital ("Bridgewater"), a DOC facility located in Bridgewater, Massachusetts, following a suicide attempt on January 10, 2012.

63.     Mr. Lopes was committed to Bridgewater and remained there until he was transferred to Old Colony on September 6, 2012.

64.     During intake at Old Colony, Mr. Lopes emphasized his Single Cell Restriction and medical need for a single cell. An officer eventually took him to the A1 unit and told him that his cell assignment was "G19, top bunk." Mr. Lopes looked into cell G19 and saw that another inmate occupied the bottom bunk. Mr. Lopes explained to the officer that he had just been transferred from Bridgewater and was subject to a Single Cell Restriction.

65.     The officer called over the captain, who insisted that Mr. Lopes enter the cell despite his medical needs. When Mr. Lopes refused, he was placed in segregation and issued Disciplinary Report No. 263945. Since then, Mr. Lopes has been approached on multiple occasions and ordered to enter a cell with a cellmate. He is disciplined at the order and/or with the assent of defendant Ms. Mitchell when he refuses on medical grounds.

66.     Mr. Lopes remains in segregation. In fact, with the exception of a three-day period during which he was placed in an observation unit, Mr. Lopes has been held in segregation since his arrival at Old Colony. Mr. Lopes is concerned that, once again, he will repeatedly be punished for his mental illness rather than be given the medical care he needs.

**Revision to DOC Policy Concerning Emergency Mental Health Services**

67.     On or about October 8, 2010, defendant Mr. Dickhaut issued the memorandum attached as **Exhibit H**, which announced that, effective October 11, 2010, any inmate who requests emergency mental health services in order to "effect a housing change (including single

cell requests)" will be disciplined.  Mr. Lopes was aware of this policy ("Revised Policy") and knew that it applied to him while he was incarcerated at SBCC from May 2011 to January 2012.

68. The Revised Policy applied categorically and thus arbitrarily, without consideration of underlying circumstances or the reasonability of an inmate's request.

69. The Revised Policy deterred Mr. Lopes from seeking necessary medical services to which he was entitled.  The absence of such care caused Mr. Lopes mental and physical harm.

## COUNT I

**Substantive Due Process – Fourteenth Amendment of the United States Constitution**
(42 U.S.C. § 1983)

70. Mr. Lopes restates and realleges paragraphs 1-69 as if fully stated herein.

71. The Revised Policy (a) impermissibly interferes with fundamental liberty interests of Mr. Lopes and other DOC inmates; (b) imposes atypical and significant hardships on Mr. Lopes and other DOC inmates in relation to ordinary incidents of prison life; and (c) is arbitrary and unreasonable as applied to Mr. Lopes.

72. The defendants' conduct with respect to Mr. Lopes' cell assignment (a) impermissibly interferes with fundamental liberty interests of Mr. Lopes and other DOC inmates; (b) imposes atypical and significant hardships on Mr. Lopes and other DOC inmates in relation to ordinary incidents of prison life; and (c) is arbitrary and unreasonable.

73. By their policies, practices, acts, or omissions, the defendants have violated the substantive due process rights of Mr. Lopes and other inmates in violation of the Fourteenth Amendment of the United States Constitution.

## COUNT II

**Substantive Due Process – Articles 1, 10, and 12 of the Massachusetts Declaration of Rights**
(G. L. c. 231A)

74. Mr. Lopes restates and realleges paragraphs 1-73 as if fully stated herein.

75. The Revised Policy (a) impermissibly interferes with fundamental liberty interests of Mr. Lopes and other DOC inmates; (b) imposes atypical and significant hardships on Mr. Lopes and other DOC inmates in relation to ordinary incidents of prison life; and (c) is arbitrary and unreasonable as applied to Mr. Lopes.

76. The defendants' conduct with respect to Mr. Lopes' cell assignment (a) impermissibly interferes with fundamental liberty interests of Mr. Lopes and other DOC inmates; (b) imposes atypical and significant hardships on Mr. Lopes and other DOC inmates in relation to ordinary incidents of prison life; and (c) is arbitrary and unreasonable.

77. By their policies, practices, acts, or omissions, the defendants have violated the substantive due process rights of Mr. Lopes and other inmates in violation of Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

## COUNT III

**Procedural Due Process – Fourteenth Amendment of the United States Constitution**
(42 U.S.C. § 1983)

78. Mr. Lopes restates and realleges paragraphs 1-77 as if fully stated herein.

79. The defendants have, in effect, purported to remove Mr. Lopes' Single Cell Restriction without providing Mr. Lopes notice and an opportunity for hearing.

80. By their policies, practices, acts, or omissions, the defendants have violated the procedural due process rights of Mr. Lopes in violation of the Fourteenth Amendment of the United States Constitution.

## COUNT IV

**Procedural Due Process – Articles 1, 10, and 12 of the Massachusetts Declaration of Rights**
(G. L. c. 231A)

81. Mr. Lopes restates and realleges paragraphs 1-80 as if fully stated herein.

82. The defendants have, in effect, purported to remove Mr. Lopes' Single Cell Restriction without providing Mr. Lopes notice and an opportunity for hearing.

83. By their policies, practices, acts, or omissions, the defendants have violated the procedural due process rights of Mr. Lopes in violation of Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

## COUNT V
## Violation of the Eighth and Fourteenth Amendments of the United States Constitution
(42 U.S.C. § 1983)

84. Mr. Lopes restates and realleges paragraphs 1-83 as if fully stated herein.

85. The defendants have displayed deliberate indifference to the serious medical needs of Mr. Lopes.

86. Said deliberate indifference has caused severe deterioration of Mr. Lopes' mental and physical health and amounts to a wanton and unnecessary infliction of pain.

87. By their policies, practices, acts, or omissions, the defendants have violated Mr. Lopes' rights under the Eighth and Fourteenth Amendments of the United States Constitution to be free from cruel and unusual punishment.

## COUNT VI
## Violation of the Americans with Disabilities Act
(42 U.S.C. § 12132)

88. Mr. Lopes restates and realleges paragraphs 1-87 as if fully stated herein.

89. Mr. Lopes is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act ("ADA"). Mr. Lopes suffers from mental impairments that substantially limit major life activity and prevent him from controlling his behavior.

90. The DOC constitutes a public entity, as defined in the ADA.

91. Mr. Lopes, as an inmate in the custody of the DOC, meets the essential eligibility requirements for receipt of services and participation in programs provided by the DOC.

92. Defendants have discriminated against Mr. Lopes on the basis of his disability and have failed, without justification, to provide reasonable accommodations in relation to the same.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Lopes respectfully requests that this Court:

(a) Enter judgment for Mr. Lopes and against each applicable defendant on all counts of this Second Amended Complaint;

(b) Declare that, both facially and as applied to Mr. Lopes, the Revised Policy violates the Fourteenth Amendment of the United States Constitution;

(c) Declare that, both facially as applied to Mr. Lopes, the Revised Policy violates Articles 1, 10, and 12 of the Massachusetts Declaration of Rights;

(d) Declare the defendants' conduct with respect to Mr. Lopes' cell assignment to be in violation of the Fourteenth Amendment;

(e) Declare the defendants' conduct with respect to Mr. Lopes' cell assignment to be in violation of Articles 1, 10, and 12 of the Massachusetts Declaration of Rights;

(f) Declare the conduct of the defendants to constitute deliberate indifference to the medical needs of Mr. Lopes in violation of the Eighth and Fourteenth Amendments of the United States Constitution;

(g) Declare the defendants' conduct to be in violation of the ADA;

(h) Enjoin the defendants from persisting in such conduct;

(i) Vacate findings of guilt with respect to disciplinary reports against Mr. Lopes arising from actions reasonably undertaken by him to obtain necessary medical care;

(j) Award damages to Mr. Lopes sufficient to compensate him for violation of his rights under the United States Constitution, the ADA, and Massachusetts law;

(k) Award reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

(l) Grant such other and further relief as the Court considers just and proper.

Dated: October 1, 2012.

>Respectfully submitted,
>
>DANILO LOPES,
>By his Attorney,
>
>/s Michael T. Mullaly
>MICHAEL T. MULLALY
>B.B.O. # 672908
>Desmond Strang & Scott LLP
>650 Beacon Street, 4th Floor
>Boston, MA 02215
>(857) 233-5534
>mmullaly@dsandslaw.com

CERTIFICATE OF SERVICE: I hereby certify that a true copy of the above document was served upon each attorney of record via CM/ECF on October 1, 2012.

>/s Michael T. Mullaly
>MICHAEL T. MULLALY