# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                        )
                                        )
DANILO LOPES,                           )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Civil Action No. 11-cv-12063
                                        )
JOHN BELAND et al.,                     )
                                        )
        Defendants.                     )
                                        )
_____)
```

## MEMORANDUM AND ORDER

**CASPER, J.**                                                **March 29, 2014**

## I.      Introduction

Plaintiff Danilo Lopes ("Lopes"), a Massachusetts Department of Correction ("DOC") inmate, has brought this lawsuit against the Defendants: Luis S. Spencer, DOC Commissioner; Lawrence M. Weiner, Assistant Deputy Commissioner for Clinical Services; Lisa A. Mitchel, Superintendent of Old Colony Correctional Center, a DOC facility; Scott E. Anderson, Acting Superintendent of MCI-Shirley, a DOC facility; Thomas E. Dickhaut, Superintendent of Souza-Baranowski Correctional Center ("SBCC"), a DOC facility; Anthony M. Mendonsa, Superintendent of SBCC; and Thomas M. Tocci, Institutional Grievance Coordinator of SBCC (collectively, "the DOC Defendants") and MHM Correctional Services, Inc. ("MHM"); George D. Johns, MHM's Regional Vice President; Joel T. Andrade, MHM's Director of Clinical Programs for Massachusetts; DJ Hager, MHM's Grievance and Appeal Coordinator; and John

Beland, MHM's Mental Health Director for SBCC (collectively, "the MHM Defendants").[1] D. 54 (Second Amended Complaint). Lopes has alleged violations of his substantive due process rights under federal and state law (Counts I and II); procedural due process rights under federal and state law (Counts III and IV); the Eighth and Fourteenth Amendments of the United States Constitution (Count V); and the Americans with Disabilities Act (Count VI), based on the Defendants' alleged failure to abide by a mental health order requiring Lopes to be housed in a single cell. Id. The Defendants have moved for summary judgment on all counts on the grounds that Lopes failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act ("PLRA"). D. 79; D. 92. For the reasons discussed below, the Court DENIES IN PART the DOC Defendants' motion, D. 79, as to the exhaustion issue, but ALLOWS the motion IN PART only insofar as it DISMISSES Lopes's ADA claim, Count VI of the Second Amended Complaint; and ALLOWS the MHM Defendants' motion, D. 92.

## II.    Facts

Unless otherwise noted, the following facts are undisputed, as indicated in the MHM Defendants' statement of material facts, D. 94, and Lopes's response to same, D. 101.

### A.    Background

Lopes is an inmate in DOC custody, D. 94 ¶ 1; D. 101 ¶ 1, and has been incarcerated at a number of DOC facilities over the past several years. See D. 94 ¶¶ 6–7; D. 101 ¶¶ 6–7. From May 2009 to May 2011, Lopes was incarcerated at MCI Shirley. See D. 94 ¶ 6; D. 101 ¶ 6. From May 2011 to January 2012, he was incarcerated at SBCC. Id.

---

[1] The parties have since stipulated to the dismissal of Defendants Andrade and Johns from the complaint. D. 68.

Lopes alleges that in 2005, the DOC granted him a "single cell restriction" due to a "medical condition that rendered it unsafe for him" to be housed with a cellmate. D. 94 ¶ 5; D. 101 ¶ 5. Lopes further alleges that since 2009, the DOC intermittently disregarded this single cell restriction, at times housing him in a single cell and at other times with a cellmate. D. 94 ¶¶ 5, 7; D. 101 ¶¶ 5, 7.

MHM is the medical contractor responsible for DOC's mental health services. D. 94 ¶ 27; D. 101 ¶ 27. According to the DOC's grievance policy, grievances regarding "medical or clinical decisions related to an inmate's physical or mental condition" must be made directly to MHM, which is required to maintain its own grievance policy. 103 C.M.R. § 491.08.

**B.  Lopes's DOC Grievance and MHM Grievances**

After a number of disciplinary actions and suicide attempts stemming from Lopes's disagreement with DOC placing him in double bunk cells, D. 94 ¶¶ 7–10, 12, 14–15; D. 101 ¶¶ 7–10, 12, 14–15, Lopes filed an MHM grievance, dated October 13, 2011, requesting a single bunk cell ("the MHM Grievance"). D. 94 ¶ 21; D. 101 ¶ 21; D. 95-5. The record suggests that at the time, Lopes's single cell status was still in place. See February 29, 2012 Letter from MHM to Lopes (D. 54-5 at 2) (noting that "you have had an unexpired single cell restriction order from 2005").

In a letter dated October 14, 2011, MHM denied the grievance, stating that the "mental health department is not responsible for housing and classification issues." D. 94 ¶ 22; D. 101 ¶ 22; D. 54-4. The letter further stated that Lopes should "refer [his] request directly to security personnel" and informed Lopes that he was entitled to file a first level appeal to the MHM Grievance and Appeal Coordinator if he did not agree with MHM's grievance response D. 54-4 at 2.

### 1. Lopes Files DOC Grievance

Lopes filed a formal grievance with the DOC, dated November 1, 2011, which alleged that his single cell status was not being honored ("the DOC Grievance"). D. 94 ¶ 11; D. 101 ¶ 11; D. 54-3 at 2. In the grievance, Lopes iterated his "need for a single bunk cell due to [his] serious mental health and safety needs, attempted suicide, on watch, D-reports, confiscation of my property. . . ." D. 54-3 at 2.

In a notice dated November 21, 2011, the DOC's Institutional Grievance Coordinator informed Lopes that he would be extending the time he would take to respond to the DOC Grievance. D. 96-1 at 10. In a notice dated December 6, 2011, the DOC's Institutional Grievance Coordinator again extended the time he would take to respond to the grievance. D. 96-1 at 11.

On December 8, 2011, the DOC's Institutional Grievance Coordinator denied Lopes's grievance, noting that Lopes was "currently not on single cell status." D. 54-3 at 2. The denial included a notice stating that the "[d]enied grievance may be appealed to the Superintendent within 10 working days of the Institution[al] Grievance Coordinator's decision." Id. There is no evidence in the record that Lopes filed an appeal of the DOC's Institutional Grievance Coordinator's decision.

### 2. Lopes Appeals MHM Grievance

On November 17, 2011, Lopes took two actions relevant to this case: (1) in regard to the MHM Grievance, he filed a first level appeal form to MHM, D. 101 ¶ 23A; D. 95-7; and (2) Lopes initiated this lawsuit. D. 1.

In a notice dated February 29, 2012, MHM denied Lopes's first level appeal of the MHM Grievance. D. 101 ¶ 23B; D. 54-5; D. 95-8. The letter indicated that the appeal was received on

November 29, 2011 and that the MHM Grievance and Appeal Coordinator "delayed [his] response and extended [his] allowance for due diligence as [Lopes had] remained at Bridgewater State Hospital." D. 54-5 at 2. In the notice, the MHM Grievance and Appeal Coordinator acknowledged that the "Inmate Management System note[d] that [Lopes had] an unexpired single cell restriction order from 2005." Id. at 2. The letter continued:

> However, the fact that you have made serious suicide attempts while housed in single cells at [SBCC] calls into question why a mental health provider would mandate that a suicidal inmate be provided privacy to again attempt suicide. You may be able to earn a single cell assignment through established practices relating to housing unit seniority and good conduct but the original grievance decision is upheld.

Id. The letter notified Lopes that he was entitled to pursue a second level appeal with the DOC's Health Services Division. Id.

On December 12, 2012, Lopes sent a letter to the DOC Health Services Division, stating that he was pursuing a second level appeal. D. 94 ¶ 24; D. 101 ¶ 24; D. 95-9. The DOC Health Services Division responded in a letter dated January 16, 2013, acknowledging receipt of the December 12th grievance appeal and stating that "[a]ccording to information provided by MHM at this time your current provider has issued a single cell order." D. 94 ¶ 25; D. 101 ¶ 25; D. 95-10.

## III. Procedural History

Lopes initiated this lawsuit on November 17, 2011. D. 1. On October 1, 2012, Lopes filed a second amended complaint, D. 54, which remains the operative complaint. On November 30, 2012, the DOC Defendants moved to dismiss the second amended complaint for failure to state a claim upon which relief can be granted and failure to exhaust administrative remedies prior to filing suit. D. 79.

On April 5, 2013, the Court converted the DOC Defendants' motion to dismiss, D.79, into a motion for summary judgment only as the issue of exhaustion, allowing the Defendants to supplement the record on this exhaustion issue. D. 91. The MHM Defendants also filed a summary judgment motion concerning the issue of exhaustion on June 17, 2013. D . 92. After a hearing on January 22, 2014, the Court took the motions for summary judgment under advisement. D. 109.

## IV.    Standards of Review

### A.    <u>Summary Judgment</u>

The Court grants summary judgment when there is no genuine dispute of material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material it if "carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000). The moving party bears the burden of showing that there is no genuine issue of material fact. <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000). If the moving party meets this burden, the non-moving party must provide specific admissible facts demonstrating a genuine issue for trial, <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010), and may not simply rely on allegations or denials made in pleadings. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

The Court views the record in the light most favorable to the non-moving party and will draw reasonable inferences in its favor. <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009). However, if the non-moving party fails to present "supported facts that controvert the factual assertions" contained in the moving party's statement of material facts, the Court will consider

such facts admitted.  <u>Rodio v. R.J. Reynolds Tobacco Co.</u>, 416 F. Supp. 2d 224, 227 (D. Mass. 2006).

### B.    <u>Motion to Dismiss for Failure to State a Claim</u>

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court accepts "the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor."  <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44 (1st Cir. 2012).  The Court must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged."  <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013) (quotations and citations omitted).

Although a complaint need not include a "high degree of factual specificity," it "must contain more than a rote recital of the elements of a cause of action."  <u>García-Catalán</u>, 734 F.3d at 103 (citations omitted).  Reading the complaint as a whole, <u>id.</u>, there "need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action."  <u>Rodríguez-Reyes v. Molina- Rodríguez</u>, 711 F.3d 49, 55 (1st Cir. 2013).

## V.    Discussion

The Defendants argue that Lopes's complaint should be dismissed because he failed to exhaust his administrative remedies prior to filing suit, as required by the PLRA.  D. 79; D. 92.  Lopes counters that summary judgment is improper because: (1) he exhausted his administrative remedies; (2) he had no available remedy outside of filing suit for grieving his mental health concerns because the MHM grievance procedure is not an administrative remedy under the

PLRA; and (3) the Defendants waived their right to raise the affirmative defense of exhaustion. D. 96. The Court addresses each argument in turn.

A.      **The Defendants Have Not Met Their Burden of Showing that Lopes Did Not Exhaust His DOC Administrative Remedies**

Pursuant to 42 U.S.C. § 1997e(a)), "exhaustion of available administrative remedies is required for any suit challenging prison conditions." Woodford v. Ngo, 548 U.S. 81, 85 (2006). The Defendants have the burden of raising and proving that exhaustion was not satisfied. Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). Similarly, Massachusetts law requires exhaustion of administrative remedies before an inmate may file a lawsuit. Ryan v. Pepe, 65 Mass. App. Ct. 833, 838-39 (2006) (citing Mass. Gen. L. c. 127, § 38F).

The DOC Defendants have not satisfied their burden of showing that Lopes failed to exhaust his administrative remedies prior to filing suit. Setting out the DOC grievance procedure in the Code of Massachusetts Regulations, 103 C.M.R. § 491, D. 101 ¶ 26, the regulations require that to file a proper grievance, an inmate must complete and return a grievance form, to which the DOC's Institutional Grievance Coordinator must respond within ten working days. 103 C.M.R. §§ 491.09; 491.10. A grievance denial must inform the inmate that he has the right to an appeal. 103 C.M.R. § 491.10(4). To appeal a grievance denial, the inmate must file the appropriate form with the facility's Superintendent within ten working days of receiving the denial. 103 C.M.R. § 491.12.

The parties do not dispute that sometime in early November 2011, Lopes filed a formal grievance with the SBCC Superintendent claiming that needed a single bunk cell due to his

health needs. D. 101 ¶ 11. In a notice dated November 21, 2011, the DOC's Institutional Grievance Coordinator informed Lopes that he would be extending the time he would take to respond to the DOC Grievance. D. 96-1 at 10. In a notice dated December 6, 2011, the DOC's Institutional Grievance Coordinator again extended the time he would take to respond to the grievance. D. 96-1 at 11. On December 8, 2011, the DOC's Institutional Grievance Coordinator denied Lopes's grievance. D. 54-2 at 2; D. 54-3 at 2. The denial included a notice stating that the "[d]enied grievance may be appealed to the Superintendent within 10 working days of Institutional Grievance Coordinator's decision." Id.

While there is no evidence in the record that Lopes filed an appeal of the DOC's Institutional Grievance Coordinator's decision, Lopes argues that the Institutional Grievance Coordinator did not respond to his grievance until December 8, 2011, failing to comply with the regulation requiring him to either respond to the grievance within ten working days or inform the inmate that he would be extending the time in which he would respond. D. 100 at 6-8. The DOC Defendants counter that they complied with the timing requirements because while Lopes dated the grievance November 1, 2011, the DOC did not actually receive the grievance until November 7, 2011, D. 99 at 3–4, and that the Institutional Grievance Coordinator properly extended the time for responding to the grievance on November 21, 2011. D. 99 at 4 (citing D. 96-1 at 10).

Since exhaustion is an affirmative defense, Casanova v. Dubois, 304 F.3d 75, 77 & n.3 (1st Cir. 2002), it "'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'" Id. (quoting Wendall v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)). Accordingly, some circuits have held or suggested that defendants may be estopped from asserting exhaustion as a defense when they interfered with an inmate's attempts to pursue administrative remedies. See,

e.g., Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (vacating and remanding lower court's decision because the court did not consider plaintiff's estoppel argument and holding that the "affirmative defense of exhaustion is subject to estoppel"); Johnson v. Ford, 261 F. App'x 752, 755–57 (5th Cir. 2008) (holding that the Supreme Court's decision in Woodford, 548 U.S. at 83, did not alter the Fifth Circuit's holding that "the exhaustion requirement may be subject to certain defenses such as waiver, estoppel, or equitable tolling") (citations and quotations omitted).

With such considerations, the DOC Defendants are not entitled to summary judgment on the issue of exhaustion. Here, there is a genuine dispute of material fact as to the date on which the DOC Defendants received Lopes's grievance. Under 103 C.M.R. § 491.09(3)(b), "[a]ll mailboxes or drop boxes identified for inmate grievances shall be opened at least once each working day." Thereafter, "[a]ll grievances shall be forwarded to the Institutional Grievance Coordinator on the date received. The Institutional Grievance Coordinator shall sign, date-stamp and number each grievance received." 103 C.M.R. § 491.09(3)(c). Here, Lopes has provided the Court with admissible evidence by way of an affidavit from another inmate that the inmate placed Lopes's DOC Grievance in the grievance mailbox. Affidavit of Rashad Akeem Rasheed (D. 96-2). Accordingly, the latest the DOC Grievance should have been retrieved by the DOC was November 2, 2011.[2] Therefore, the Court cannot say on this record that the Grievance Coordinator extended the response time within ten working days of receipt by extending the time period to respond on November 21.

---

[2] The only evidence cited by the DOC Defendants in support of their argument is the grievance itself, see D. 99 at 4, which shows that the Institutional Grievance Coordinator indicated on the form that he received the grievance on November 7, 2011.

In light of this disputed issue of material fact, the Court cannot conclude that the DOC Defendants complied with their own grievance policy or that their affirmative defense of exhaustion should not subject to equitable considerations. Given that the Defendants have not shown that there is no genuine issue of material fact that would preclude summary judgment as to exhaustion, summary judgment in their favor on this issue is not warranted. See Maraglia v. Maloney, 499 F. Supp. 2d 93, 96–97 (D. Mass. 2007) (finding that factual disputes precluded summary judgment because while he could not provide documentation that he filed grievances, the inmate attested that he filed them).

For these reasons, the Court finds that the DOC Defendants have not met their burden of proving that Lopes failed to exhaust his DOC administrative remedies and DENIES their motion for summary judgment as to this issue.

**B.** **The Court Allows the MHM Defendants' Motion for Summary Judgment**

Like the DOC Defendants, the MHM Defendants argue that the Court should dismiss the claims against them because Lopes did not exhaust the MHM grievance procedure prior to filing suit. D. 93. Lopes argues that he should not be obligated to comply with the MHM grievance procedure because requiring inmates to comply with a medical contractor's grievance procedure is inconsistent with the statutory mandate requiring DOC to establish a grievance system. D. 100 at 3-5. The Court concludes that the MHM grievance procedure is consistent with the PLRA and that Lopes failed to exhaust his MHM administrative remedies prior to filing suit.

*1.* *The DOC Has Provided an Administrative Remedy for Medical or Clinical Decisions*

While Lopes argues that the MHM grievance procedure was not promulgated by a governmental entity and therefore, is not an available administrative remedy pursuant to the PLRA, D. 100 at 8–9, Lopes has not cited any binding legal authority for this proposition, apart

from the comparison of the state's authorizing statute and the regulations promulgated by the DOC on this issue. See D. 100 at 4–5. In what Lopes describes as the "only case addressing the issue," D. 100 at 10, a Massachusetts trial court rejected the defendants' exhaustion defense because there was no evidence in the record regarding the medical contractor's grievance process. Kirkland v. Brewer, No. WOCV200800331, 2009 WL 2603752, at *2 n.2 (Mass. Super. July 13, 2009). As discussed below, the undisputed record in this case includes the specifics of MHM's grievance procedure.

The other cases Lopes cites in support of his position are also distinguishable on various grounds. Two of the cases applied specifically to Maryland's DOC grievance procedure and followed the state appellate court's decision holding that, after review of the legislative history of the Maryland Administrative Remedy Procedure grievance process, Maryland's prisoner administrative remedy procedure did not "encompass complaints against private medical providers under contract with the state." Shannon v. Nero, No. CIV.A. ELH-11-3689, 2013 WL 500704, at *7–8 (D. Md. Feb. 8, 2013); Wilson v. Maryland Div. of Corr., No. CIV.A. DKC-11-111, 2011 WL 2118956, at *2 n.4 (D. Md. May 25, 2011) (both citing Adamson v. Correctional Medical Services, Inc., 359 Md. 238 (2000)). Further, in Stevens v. Goord, No. 99 CIV. 11669 (LMM), 2003 WL 21396665, at *5 (S.D.N.Y. June 16, 2003), the court noted that there was no evidence that the "prison grievance tribunal would have had any authority to take some responsive action to [the inmate's] complaints." That is not the case here, as the final appeal of an MHM grievance is made to the DOC Health Services Division, D. 95-4 at 4, as described below. Finally, in Price v. Reilly, 697 F. Supp. 2d 344, 355 (E.D.N.Y. 2010), the court based its decision, in part, on the fact that the correctional facility had not provided any evidence that its procedures offered a remedy for the inmate's particular situation.

Here, "medical or clinical decisions related to an inmate's physical or mental condition shall not be grievable under 103 C.M.R. § 491.00 as the medical contractor is required to maintain its own grievance procedure . . . ." 103 C.M.R. § 491.08. Per the regulations, MHM must provide a specific grievance procedure for "medical or clinical decisions related to an inmate's physical or mental condition." Id. The provision of an MHM grievance policy for decisions related directly to the service MHM is contracted to provide for the DOC affords inmates a grievance procedure for this particular type of complaint. Cf. Casanova, 304 F.3d at 77 (declining to dismiss on exhaustion grounds when the DOC had "no grievance procedure available for complaints of the type" brought by the inmates). Accordingly, Lopes was provided an administrative remedy for grieving decisions related to the health-related relief that he sought.

### 2. Lopes Did Not Exhaust the MHM Grievance Procedure

The parties do not appear to dispute that Lopes took the appropriate steps to invoke the MHM grievance procedure – rather, the parties dispute whether Lopes prematurely filed his lawsuit before completing the MHM grievance process. The Court concludes that the undisputed facts show that Lopes did not exhaust the MHM grievance procedure prior to filing suit.

It is undisputed that the MHM grievance procedure is the process "to manage informal and formal inmate grievances regarding mental health services." D. 101 ¶ 28 (citing D. 95-4). The MHM grievance policy requires that after an inmate files a formal grievance, the Mental Health Director respond to the grievance within ten working days of receiving the grievance. D. 95-4 at 3–4. If the inmate is dissatisfied with the response to his grievance, he may file a first level appeal to the MHM Grievance and Appeal Coordinator. D. 95-4 at 4. The MHM Grievance and Appeal Coordinator must then respond to the appeal within thirty working days.

Id. at 5. If the inmate so wishes, he may appeal that decision to the DOC Health Services Division. Id.

Lopes filed his MHM Grievance on October 13, 2011. D. 101 ¶ 21. MHM denied the grievance on October 14, 2011, stating that the "mental health department [was] not responsible for housing and classification issues." D. 101 ¶ 22 (citing D. 54-4). Lopes filed a first level appeal with MHM on November 17, 2011. D. 101 ¶ 23A. Lopes did not, however, allow thirty days for the MHM Grievance and Appeal Coordinator to respond to his appeal, D. 95-4 at 5, and instead filed this lawsuit the same day, November 17, 2011. D. 1. While the Court acknowledges that Lopes completed the MHM grievance process during the pendency of this lawsuit, the First Circuit has held that dismissal is the appropriate remedy for an inmate's failure to exhaust his administrative remedies prior to filing suit, given that "exhaustion *prior* to the commencement of the action is an indispensable requirement" under the PLRA. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (emphasis in original) (citing Jackson v. Dist. of Columbia, 254 F.3d 262, 268–69 (D.C.Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.")).[3]

---

[3]The Court rejects Lopes's argument that the Defendants waived their right to raise exhaustion as an affirmative defense on the grounds that they twice stipulated to the amendment of Lopes's pleadings. D. 96 at 14. Fed. R. Civ. P. 8(c)(1) requires that "in responding to a pleading, a party must affirmatively state any . . . affirmative defense." The DOC Defendants raised exhaustion in their dispositive motion in response to the second amended complaint, D. 79, and the remaining MHM Defendants who filed their motion for summary judgment after having filed answers, D. 92, raised exhaustion as an affirmative defense in their respective answers. D. 64 at 12; D. 65 at 12; D. 66 at 12. Accordingly, the Defendants did not waive their right to this affirmative defense on this basis.

Accordingly, the Court ALLOWS the MHM Defendants' motion for summary judgment based upon Lopes's failure to exhaust prior to filing suit.

### C. The Court Allows in Part the DOC Defendants' Motion to Dismiss for Failure to State a Claim, Insofar as the Court Dismisses Lopes's ADA Claim

The Court now turns to the portions of the DOC Defendants' motion to dismiss the second amended complaint for failure to state a claim, which was not converted to a motion for summary judgment.  D. 79.

#### 1. *The Factual Allegations are Sufficient as to Defendants Spencer and Weiner*

The DOC Defendants first contend that Spencer, DOC Commissioner sued in his official capacity, D. 54 ¶ 2, must be dismissed because the complaint does not contain any factual allegations specifically as to him.  D. 80 at 8.

The Court concludes that the complaint makes sufficient factual allegations as to Spencer.  A "supervisor may be a primary violator or direct participant in the rights-violating incident or liability may attach if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."  <u>Sanchez v. Pereira–Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009) (internal citations and quotations omitted).  The complaint alleges that Spencer is responsible for "establishing and enforcing standards for all DOC facilities and making and promulgating necessary rules and regulations regarding the care and custody of DOC inmates."  D. 54 ¶ 2.  As discussed below, Lopes has sufficiently stated a claim for all but his ADA claim based on the DOC Defendants' allegedly deliberate failure to abide by his single cell status.  Taking the complaint as a whole, he has alleged facts sufficient to state a plausible claim against Spencer in his official capacity.

Likewise, the DOC Defendants argue that the complaint contains only one factual allegation against Weiner, Assistant Deputy Commissioner of Clinical Services sued in his personal capacity, D. 54 ¶ 3 – that he received copies of decision letters that the MHM Defendants sent to Lopes regarding his requests for a single cell. D. 80 at 8. However, the complaint also alleges that "[e]ach named defendant [] knowingly disregarded Mr. Lopes' Single Cell Restriction." D. 54 ¶ 30. As discussed more fully below, taking the complaint as a whole, these allegations as to Weiner are also sufficient for stating a plausible claim.

2.    *Lopes Has Sufficiently Pleaded an Eighth Amendment Claim*

The Defendants further argue that Lopes has failed to state an Eighth Amendment claim against the DOC Defendants. D. 80 at 9. The United States Supreme Court has held:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . [and]; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation and quotations omitted). "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. Therefore, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." Id. (quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. In other words, the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The Court considers it premature to dispose of Lopes's Eighth Amendment claim at this juncture. The Defendants focus their arguments in support of the motion to dismiss on the

assertion that Lopes has decided that he should not be bunked with a cellmate and that such assessment does not form a sufficient basis for an Eighth Amendment claim. D. 80 at 11–12. However, the Court agrees with Lopes's argument that the complaint against the DOC Defendants centers on their knowing disregard for the single cell status in place as of 2005, based upon his mental health and safety concerns, and not on any self-diagnosis of his medical needs. Lopes has pleaded that his mental health condition was sufficiently serious such that the DOC put him on single cell status in 2005, D. 54 ¶ 25, a practice generally undertaken for "medical or other necessary reasons." Id. ¶ 26. Despite this restriction, Lopes pleads, the DOC Defendants knowingly disregarded the order. Id. ¶ 30. Considering the facts pled in the light most favorable to Lopes, the Court concludes that Lopes has pleaded sufficient facts for an Eighth Amendment claim and DENIES the motion to dismiss such claim.

### 3. Lopes Has Sufficiently Stated a Claim for Violation of Procedural and Substantive Due Process

#### i. Procedural Due Process

The Defendants next argue that Lopes's procedural and substantive due process claims fail because he had no protected liberty interest in a single cell. D. 80 at 14. The Supreme Court has held, however, that an inmate has a protected liberty interest in the event of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472 (1995). Although the Defendants argue that being placed in a single cell is not in and of itself a protected liberty interest, D. 80 at 14, as discussed above, the Defendants overlook the nature of Lopes's allegation that the DOC disregarded and "purported to remove," D. 54 ¶ 79, an order that restricted him to a single cell for mental health reasons. While, as the Defendants point out, the case is law is clear that double-bunking is not in itself a per se due process violation, see Cote v. Murphy, 152 F. App'x 6, 7 (1st Cir. 2005); Bell v. Wolfish, 441

U.S. 520, 542 (1979), double-bunking may "in rare cases [] amount to an unlawful practice when combined with other adverse conditions." Cote, 152 F. App'x at 7. Combined with the established due process right to "reasonable safety," id. (citing Youngberg v. Romeo, 457 U.S. 307, 324 (1982), the Court concludes that Lopes has pleaded a plausible basis for having a protectable liberty interest in his single-cell restriction, which he alleges was put into place to prevent further harm to his mental health. D. 54 ¶¶ 24-26.

ii.     Substantive Due Process

The DOC Defendants next argue that Lopes has not stated a claim for a violation of substantive due process because he has no protected liberty interest and the DOC's actions did not "shock the conscience." D. 80 at 15. "[T]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (citations and quotations omitted). However, claims "covered by a specific constitutional provision, such as the . . . Eighth Amendment . . . must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); Albright v. Oliver, 510 U.S. 266, 273 (1994). As discussed above, reading the complaint in the light most favorable to Lopes, he has alleged a protected liberty interest in safe conditions during incarceration pursuant to the Eighth Amendment.

Addressing the Defendants' argument that their actions did not "shock the conscience," "[w]hen "an executive action [] is challenged, the threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Molina, 607 F.3d at 880 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, (1998)). "Whether [an official's behavior] 'shocks the conscience' is

necessarily fact-specific and unique to the particular circumstances in which the conduct occurred." Molina, 607 F.3d at 881 (quoting Cruz–Erazo v. Rivera–Montanez, 212 F.3d 617, 623 (1st Cir. 2000)). However, "in situations where actual deliberation on the part of a governmental defendant is practical, the defendant may be held to have engaged in conscience-shocking activity by exercising deliberate indifference." Molina, 607 F.3d at 881 (citation and quotations omitted). Given the fact-intensive nature of the deliberate indifference inquiry, the Court finds it inappropriate to dispose of Lopes's substantive due process claim on this ground and at this juncture. As discussed above, Lopes has alleged that despite the existence of the 2005 order, the Defendants repeatedly housed him with a cellmate. Lopes alleges that the DOC frequently changed his cellmates because of "problems arising from [his] anxiety and its manifestation in the form of violent attacks and/or threats." D. 54 ¶ 40. Lopes further alleges that despite these problems, and his repeated efforts to make the DOC aware of his single cell restriction, the DOC punished Lopes in a variety of ways in lieu of abiding by the restriction. Id. ¶¶ 41–66. Viewing the allegations and reasonable inferences therefrom in the light most favorable to Lopes, the Court finds that Lopes has plausibly stated a claim of violation of substantive due process.

> 4.     *The Court Will Not Dismiss Lopes's Claims on the Basis that He Failed to Seek Proper Judicial Review for Allegedly Improper Administrative Action*

The Defendants further contend that Lopes has failed to state a claim with respect to a grievance he filed and two disciplinary reports he received while incarcerated. D. 80 at 19–21. However, as discussed above, the Court does not interpret the crux of Lopes's constitutional claims as a challenge to the DOC's findings with respect to his grievance and disciplinary appeals. Rather, Lopes has cited the factual allegations surrounding the denial of the grievance

and disciplinary report appeals as support for his claim that the DOC deprived him of his constitutional rights through its failure to retain his single cell status.

### 5. Lopes Has Pleaded a Physical Injury

The Defendants next urge the Court to dismiss Lopes's claims for compensatory damages as they relate to mental or emotional injury on the basis that he does not plead a physical injury as required by Section 1997e of the PLRA. The statute states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . .

42 U.S.C. § 1997e(e). Here, at a minimum, Lopes has alleged that he attempted suicide, D. 54 ¶ 62, as a result of the Defendants' failure to abide by the single cell restriction. There is a split among courts about whether suicide attempts satisfy this "physical injury" requirement. Compare Habeebullah v. Crawford, No. 08-4063-cv-c-NKL, 2011 WL 2458060, at *5 (W.D. Mo. June 17, 2011) (noting that "suicide attempts can satisfy the physical injury requirement") and cases cited with Argetsinger v. Ritter, 08-cv-01990-PAB-KMT, 2009 WL 3201088, at *4 (D. Colo. September 29, 2009) (agreeing "that allegations of a self-inflicted injury do not show that a physical injury occurred at the hands of prison officials, as required by § 1997e(e)") and cases cited. The Court finds the former line of cases more persuasive, as represented by Arauz v. Bell, 307 Fed. App'x. 923, 929 (6th Cir. 2009): concluding that "[b]y definition, attempting suicide involves hurting oneself, and we can presume the existence of some physical injury from [the petitioner's] statement that he attempted to commit suicide." Id. (reversing district court's dismissal of petitioner's Eighth Amendment claims for failure to allege physical injury under § 1997e(e)). The Court, therefore, DENIES the motion to dismiss this portion of the claim.

### 6. *Lopes Has Not Sufficiently Alleged a Claim Under the ADA*

The Defendants also argue that Lopes has failed to state a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12165 ("ADA"). D. 80 at 22–24. Under Title II of the ADA, a plaintiff with a disability has a private right of action when public entities exclude him from services, program or activities or discriminate against him. The First Circuit has held:

> [p]ursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). Even assuming that Lopes has sufficiently pleaded that he has a disability, Lopes has not plausibly stated that he was excluded from benefits "by reason of" his alleged disability.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Lopes alleges that because of a traumatic incident and childhood abuse, D. 54 ¶ 20, he experienced "acute mental distress and physical injury" as the result of confinement or threatened confinement with a cellmate. Id. ¶ 20. Lopes has further alleged that the DOC recognized this alleged impairment when it granted him a single cell status. Id. ¶¶ 25-26.

Where the complaint fails, however, is in alleging that Lopes experienced "exclusion, denial of benefits, or discrimination [] by reason of the [his] disability." Parker, 225 F.3d at 5. While Lopes contends that the "Defendants have discriminated against [him] on the basis of his disability," D. 54 ¶ 92, Lopes does not provide a factual basis for the contention that the DOC failed to abide by his single cell status or otherwise discriminated against him because he was disabled. Accordingly, the Court finds that Lopes has not plausibly stated a claim under the ADA and ALLOWS the motion to dismiss this count.

7. *The Individual Defendants are Not Entitled to Dismissal on Qualified Immunity Grounds*

The DOC Defendants' final argument is that they are entitled to qualified immunity in their individual capacities. D. 80 at 24. Lopes has brought suit against several DOC defendants in their individual capacities: Weiner, Assistant Deputy Commissioner of Clinical Services; Mitchell, Superintendent of Old Colony; Anderson, Acting Superintendent of MCI-Shirley; Dickhaut, Superintendent of SBCC; Mendonsa, Superintendent of SBCC; and Tocci, Institutional Grievance Coordinator of SBCC.

"The defendants are entitled to qualified immunity unless: 1) the plaintiff's allegations, if true, establish a constitutional violation, 2) the right was clearly established at the time of the alleged violation and 3) a similarly situated reasonable officer would have understood that the challenged action violated the constitutional right at issue." Carroll v. City of Quincy, 441 F. Supp. 2d 215, 223 (D. Mass. 2006) (citing Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 83 (1st Cir. 2006)). "For a plaintiff to defeat qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Carroll, 441 F. Supp. 2d at 223 (citing Anderson v. Creighton, 483 U.S. 635, 640

(1987)).”  The Defendants argue that Lopes has not demonstrated a "clearly established right" sufficient to survive a motion to dismiss.

The First Circuit has held that to survive a qualified immunity challenge, "[i]t is not enough for the constitutional right to be 'clearly established' at a highly abstract level; what matters is whether in the circumstances faced by the official, he should reasonably have understood that his conduct violated clearly established law."  Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998).  "This qualified immunity standard leaves 'ample room for mistaken judgments.'"  Id. (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).  However, prison officials have a constitutional duty "not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners."  Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).  Furthermore, "[c]onduct that is deliberately indifferent to an excessive risk to [an inmate] cannot be objectively reasonable conduct."  Carroll, 441 F. Supp. 2d at 223.

As discussed above, this is not the proper juncture for the Court to determine the extent of the Defendants' deliberate indifference pursuant to alleged violations of Lopes's Eighth Amendment rights and therefore, dismissal of the individual Defendants is not warranted.  Lopes has alleged that "each named Defendant [] knowingly disregarded Mr. Lopes' Single Cell Restriction," D. 54 ¶ 30; taking the complaint as a whole, the Court can reasonably infer that the Defendants were aware of the single cell status and chose to disregard it, despite the danger such disregard could pose to Lopes.  See Carroll, 441 F. Supp. 2d at 223–24 ("Because there is a genuine issue of material fact with respect to defendants' alleged deliberate indifference, they are not entitled to qualified immunity").

## VI.    Conclusion

For the above reasons, the Court DENIES IN PART the DOC Defendants' motion, D. 79, as to the exhaustion issue, but ALLOWS the motion in part only insofar as it DISMISSES Lopes's ADA claim, Count VI of the Second Amended Complaint; and ALLOWS the MHM Defendants' motion, D. 92.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge